[No. 15144-4-I.   Division One.   April 7, 1986.]

THE STATE OF WASHINGTON, *Respondent,* v. YA SENG
CHASENGNOU, *Appellant.*

*Michael Filipovic* and *Miriam Schwartz* of *Seattle–King County Public Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Sally Stanfield, Deputy,* for respondent.

SWANSON, J.—Ya Seng Chasengnou appeals his jury conviction of unlawful possession of opium in violation of RCW 69.50.401(d), alleging error in the denial of his motion to suppress evidence seized during a search of his residence pursuant to a warrant. We affirm.

On August 23, 1983, United States Customs officials in California inspected a parcel mailed from Thailand that was addressed to Chang Vang Seng, 11800 101st Pl. N.E., No. 6, Kirkland, Washington. All packages from Thailand are inspected since that country is a known source of imported drugs. Upon opening the parcel, customs agent Art Camacho found several placemats or potholders whose stiffness and trace smell indicated to him, based upon his past experience, the presence of a controlled substance within. He performed a field test on the substance found inside one of the potholders and sent a sample of the substance to the customs laboratory for further analysis.

Based upon the laboratory results, the package was resealed and sent to federal postal inspector Dana Babcock in Seattle for a controlled delivery. Kirkland Police Detective Leonard Hayes had been informed about the parcel by

Port of Seattle Police Detective Bob Jensen and on August 29, 1983, Kirkland police officers set up a surveillance of the apartment to which the parcel was to be delivered. On that day postal inspector John Klempa, substituting for the regular letter carrier, delivered the parcel to a girl of about 12 years of age at the address stated on the package.

After the parcel was delivered, Detective Hayes obtained a search warrant for the apartment from a district court judge. The supporting affidavit detailed the inspection of the parcel containing opium by customs agents in California and its controlled delivery by a Seattle postal inspector. The warrant authorized a search of the apartment to which the parcel was delivered for opium and opium derivatives, specific paraphernalia for the use and packaging of opium, packaging materials that might indicate opium receipt methods, and specified evidence of dominion and control of the premises.

A search of the apartment pursuant to the warrant produced the unopened parcel delivered that day and a man's sock, both of which contained a substance that was later identified as opium, and documents identifying Chasengnou as the apartment's resident. Chasengnou was charged with violating RCW 69.50.401(d), and after the denial of his motion to suppress evidence seized during the search, he was convicted by a jury of this offense and was placed on probation.

The issues presented on appeal are (1) whether the trial court erred in denying the motion to suppress evidence seized pursuant to a warrant where the search warrant's issuance was based upon evidence obtained during a warrantless seizure and search by customs officials of a parcel mailed from Thailand and (2) whether the search warrant exceeded the scope of probable cause established in the supporting affidavit by authorizing a search of the entire residence for specified criminal evidence rather than for only the mailed parcel containing opium.

## BORDER SEARCH

Border searches[1] of persons and property entering the United States are not subject to the Fourth Amendment's warrant and probable cause requirements. Moreover, since the border search exception to the warrant requirement is grounded in the sovereign's recognized right, subject to constitutional limitations, to restrict or regulate the entry of persons and property across the border, the mode of entry, *i.e.*, whether an envelope or package is carried or mailed into this country, is constitutionally insignificant. *United States v. Ramsey*, 431 U.S. 606, 52 L. Ed. 2d 617, 97 S. Ct. 1972, 1979–81 (1977).

Federal courts, relying upon 19 U.S.C. § 1582,[2] have held that customs officials may search packages mailed to the United States from abroad without articulating even a reasonable cause to suspect an illegal importation. *See, e.g., United States v. Glasser*, 750 F.2d 1197, 1203–04 (3d Cir. 1984), *cert. denied*, 471 U.S. 1018, 1068 (1985), and cases cited therein. The Ninth Circuit Court of Appeals, however, has held that since neither the language nor the legislative history of section 1582 suggests that it relates to searches of international mail, the controlling statute is not section 1582 but rather 19 U.S.C. § 482,[3] which authorizes a search

---

[1]The mail sorting room at a port of entry like San Francisco constitutes the border for purposes of border searches. *United States v. Ramsey*, 431 U.S. 606, 52 L. Ed. 2d 617, 97 S. Ct. 1972, 1975 n.2 (1977); *United States v. Pringle*, 576 F.2d 1114, 1117 (5th Cir. 1978).

[2]19 U.S.C. § 1582 provides:
"The Secretary of the Treasury may prescribe regulations for the search of persons and baggage and he is authorized to employ female inspectors for the examination and search of persons of their own sex; and all persons coming into the United States from foreign countries shall be liable to detention and search by authorized officers or agents of the Government under such regulations."

[3]19 U.S.C. § 482 states in part:
"Any of the officers or persons authorized to board or search vessels may stop, search, and examine . . . any vehicle, beast, or person, on which or whom he or they shall suspect there is merchandise which is subject to duty, or shall have been introduced into the United States in any manner contrary to law, whether by the person in possession or charge, or by, in, or upon such vehicle or beast, or

of incoming mail only where the customs officer has "a reasonable cause to suspect" that merchandise was imported contrary to law. *DeVries v. Acree,* 565 F.2d 577, 579 (9th Cir. 1977).

Even if a reasonable cause to suspect an unlawful importation is required, however, that requirement was met here, as the defendant concedes in his reply brief, at page 8. Noting that "reasonable cause to suspect" is a considerably milder standard than probable cause, the Ninth Circuit has found a sufficient showing based upon facts identical to those in the instant case. *United States v. Dubrofsky,* 581 F.2d 208, 211 (9th Cir. 1978). According to the *Dubrofsky* court, since substantial quantities of narcotics are imported into the United States from Thailand, it is reasonable to suspect that a package mailed from Thailand contains contraband so that a warrantless search of such a package by customs officials is lawful. *United States v. Dubrofsky, supra.*

The defendant nonetheless argues, citing federal and Washington cases, *e.g., United States v. Miller,* 769 F.2d 554 (9th Cir. 1985) and *State v. Houser,* 95 Wn.2d 143, 622 P.2d 1218 (1980), that once the mailed parcel was opened, revealing potholders inside, a warrant was necessary to search the potholders since a closed container may not be opened without a warrant even if it is in plain view and probable cause exists to believe that contraband is concealed within. However, the cases that Chasengnou cites do not involve border searches, which rest upon different considerations and different rules of constitutional law than do domestic regulations. Border searches are deemed to be "reasonable" within the meaning of the Fourth Amendment by virtue of the mere fact of the entry of the person or item in question into the country from outside. *United States v. Ramsey,* at 619; *United States v. Glasser, supra* at 1201.

---

otherwise, and to search any trunk or envelope, wherever found, in which he may have a reasonable cause to suspect there is merchandise which was imported contrary to law . . ."

Further, section 1582 authorizes border searches, and section 482 expressly permits customs officials to search, not merely open, incoming international mail upon the requisite reasonable cause to suspect contraband. Cases addressing the issue of warrantless border searches by customs officials have found no illegality in the opening of "closed" objects or areas in mailed packages, *see, e.g., Glasser,* at 1199 (hole drilled in wooden heads disclosed hashish oil); *United States v. Dubrofsky, supra* at 210 (plastic bags containing heroin found in hollowed out walls of mailed package), or in the testing of substances found in the mailed packages, *see, e.g., United States v. Ramsey,* at 609–10; *United States v. Pringle,* 576 F.2d 1114, 1116 (5th Cir. 1978); *see also United States v. Jacobsen,* 466 U.S. 109, 80 L. Ed. 2d 85, 104 S. Ct. 1652, 1661–63 (1984) (chemical field test of legally seized contraband not unlawful search or seizure).

█ Chasengnou's claim that the warrant affidavit was invalid in asserting insufficient facts to justify the prior warrantless seizure and search of the parcel by the customs officials in California lacks force in light of the legality of the border search and in light of the affidavit's statements that the search was conducted by customs officials so that the issuing magistrate could infer that the seizure and search fell within the border search exception to the warrant requirement. A magistrate may rely upon a police officer's affidavit even though it relays hearsay information from other officers. *State v. Lodge,* 42 Wn. App. 380, 386, 711 P.2d 1078 (1985); *State v. Patterson,* 37 Wn. App. 275, 277–78, 679 P.2d 416, *review denied,* 103 Wn.2d 1005 (1984).

SEARCH WARRANT AFFIDAVIT

The next issue is whether the search warrant was overly broad. Our federal and state constitutions require that searches and seizures be reasonable. A reasonable search is one based on probability, *i.e.,* a likelihood that criminal evidence will be found, not a prima facie showing of guilt.

*Spinelli v. United States,* 393 U.S. 410, 419, 21 L. Ed. 2d 637, 89 S. Ct. 584 (1969); *State v. Patterson,* 83 Wn.2d 49, 53, 55, 515 P.2d 496 (1973).

■ Chasengnou argues that the warrant affidavit provided probable cause to search for only the mailed parcel containing opium, not the other evidence specified in the warrant. However, this is too narrow a view of the supporting affidavit, whose purpose is to provide the magistrate with facts and circumstances from which he may determine whether probable cause exists to issue a warrant. *State v. Helmka,* 86 Wn.2d 91, 92, 542 P.2d 115 (1975). The warrant affidavit must go beyond assertions of suspicion and mere personal belief that evidence of a crime will be found on the premises to be searched. *State v. Rangitsch,* 40 Wn. App. 771, 780, 700 P.2d 382 (1985). Here the affidavit states the affiant's belief that opium was located in Chasengnou's residence. That alone would be insufficient. Nevertheless, the affidavit was sufficient in that it states the factual, underlying circumstances upon which the belief was premised. *United States v. Ventresca,* 380 U.S. 102, 13 L. Ed. 2d 684, 85 S. Ct. 741, 746 (1965); *State v. Helmka, supra.*

In performing his independent, detached function, the magistrate is to operate in a commonsensical and realistic fashion and is entitled to draw reasonable inferences from the facts and circumstances set forth in the affidavit. *United States v. Ventresca, supra; United States v. Carlson,* 697 F.2d 231, 238 (8th Cir. 1983); *State v. Helmka, supra* at 93. The presence of opium in a private residence raises a legitimate inference that opium may be present throughout the residence. *State v. Olson,* 32 Wn. App. 555, 558, 648 P.2d 476 (1982). Further, from the fact that opium was in the residence, the magistrate could reasonably infer that not only additional opium but also paraphernalia for using the drug might be present on the premises. It is reasonable to infer that persons who possess opium probably use the opium on the premises. In addition, since the known opium on the premises had been delivered through the mail, a reasonable inference was that packaging materi-

als might be found on the premises that would indicate opium receipt methods. *State v. Helmka, supra.*

In *Helmka,* at 92–93, an affidavit which related details of police officers' observations through an apartment window of what appeared to be marijuana plants was found sufficient to support the issuance of a warrant to search for "marijuana" and to seize additional marijuana plants as well as processed marijuana. *State v. Christiansen,* 40 Wn. App. 249, 253, 698 P.2d 1059 (1985).

In *United States v. Dubrofsky,* 581 F.2d 208, 210, 212–13 (9th Cir. 1978), the Ninth Circuit Court of Appeals upheld the sufficiency of an affidavit to support a warrant to search Dubrofsky's house where the affidavit recited the details of Dubrofsky's arrest at a friend's home after he had picked up in a controlled delivery and had taken to this· friend's home a mailed parcel that customs agents had previously determined contained heroin. The warrant authorized a search for and seizure of heroin or other controlled substances, narcotics paraphernalia, passports, and evidence of Dubrofsky's residence.

The Ninth Circuit stated that

> a warrant may be upheld when the nexus between the items to be seized and the place to be searched rests not upon direct observation, but on the type of crime, nature of the items, and normal inferences where a criminal would likely hide contraband.

*Dubrofsky,* at 213. The *Dubrofsky* court further stated that tested in a commonsense manner, the supporting affidavit provided a sufficient basis for a neutral magistrate to issue a search warrant for Dubrofsky's home since heroin importers commonly have heroin and related paraphernalia where they live and it was probable that utility bills and other evidence of residence would be found at Dubrofsky's home. *United States v. Dubrofsky, supra.*

The issuing magistrate's probable cause determination is to be accorded great deference, *State v. Cord,* 103 Wn.2d 361, 366, 693 P.2d 81 (1985), and the reviewing court should not engage in a hypertechnical examination of the

affidavit. Any doubt should be resolved by the preference to be accorded to warrants. *State v. Helmka, supra* at 93. Moreover, the search warrant in the instant case described with sufficient particularity the place to be searched and the items to be seized. *State v. Christiansen, supra.* Here the stated facts, the inferences therefrom, and the specificity fell within the requisite ambit of reasonableness so that it cannot be said that the warrant authorized a prohibited general exploratory search. *State v. Helmka, supra; State v. Salinas,* 18 Wn. App. 455, 459, 569 P.2d 75 (1977).

The judgment and sentence are affirmed.

RINGOLD, A.C.J., and WEBSTER, J., concur.