[Nos. 33240-6-I; 33241-4-I.   Division One.   June 13, 1994.]

THE STATE OF WASHINGTON, *Appellant,* v. THOMAS HAROLD O'NEIL, et al, *Defendants,* REGAN W. HAGAR, ET AL, *Respondents.*

*Norm Maleng, Prosecuting Attorney,* and *Ellen O'Neill-Stephens* and *Scott O'Toole, Deputies,* for appellant.

*Anthony Savage* and *James S. Kempton,* for respondents.

WEBSTER, C.J. — The State appeals the suppression of evidence and termination of charges of possession with intent to manufacture or deliver marijuana and conspiracy to commit a violation of the uniform controlled substances act (VUCSA) against Regan W. Hagar and Leigh Anne Bryan. It claims the court erred in finding insufficient connection between Codefendant Thomas O'Neil and the house searched.

## FACTS

Seattle police executed a search warrant at 7222 Palatine Avenue North; they discovered 40 mature marijuana plants, valued at approximately $80,000, and 30 pounds of marijuana shake, valued at $12,000. They also discovered paraphernalia associated with manufacturing marijuana, business records, and documents of dominion and control connecting O'Neil, Hagar and Bryan to the grow operation.

The search warrant authorized the police to search for evidence, contraband and the fruits of criminal activity at a number of locations associated with Thomas O'Neil: four houses, two businesses, one vehicle, and a storage unit. Hagar and Bryan brought a motion to dismiss; after briefing and argument the court concluded that the affidavit supporting the application for the search warrant failed to establish probable cause that Codefendant O'Neil was living or storing records at the Palatine residence. The court denied the State's reconsideration motion, issued written findings of fact and conclusions of law, and the order to suppress. The court entered an order terminating counts 3 (VUCSA) and 5 (defrauding a public utility) and stayed the

trial of the remaining conspiracy charge (count 4) pending this appeal. RAP 2.2(b)(2).[1]

## DISCUSSION

■ ■ The State claims the court improperly concluded that there was insufficient probable cause to support issuance of the search warrant. It does not dispute the written findings of fact, but assigns error to the court's legal conclusion that "[p]robable cause to authorize a search warrant for the Palatine address requires a finding of substantial evidence in the underlying affidavit that O'Neil was living at the Palatine address". It argues that the search warrant affidavit was sufficient for a reasonable inference that O'Neil resided at the Palatine address and the magistrate's probable cause determination should have been accorded great deference.[2] Bryan and Hagar claim the State has improperly assigned error to oral comments made by the court (assignments of error 2-7) alleging they are not proper assignments of error as required by RAP 10.3(g).[3] However, in reviewing the validity of a search warrant

> [t]he trial court does not resolve factual conflicts but, like this court, simply determines as a matter of law whether probable cause has been established. Unless the trial court considers other matters such as whether false statements were made intentionally or in reckless disregard of the truth in support of the warrant, as in *Franks v. Delaware*, 438 U.S. 154, 57 L. Ed. 2d 667, 98 S. Ct. 2674 (1978) or material omissions of fact as in *United States v. Martin*, 615 F.2d 318 (5th Cir. 1980), the trial court's findings are superfluous.

*State v. Estorga*, 60 Wn. App. 298, 304 n.3, 803 P.2d 813, *review denied*, 116 Wn.2d 1027 (1991). In concluding that

---

[1]Count 1 charged Codefendants Thomas O'Neil and Craig Porter with VUCSA. Count 2 charged Codefendants Thomas O'Neil and Richard O'Neil with VUCSA.

[2]The court previously concluded that "[b]ecause of the absence of any observations of suspected criminal activity of O'Neil (or either of the other two named suspects) at the Palatine address in the affidavit in support of the search warrant, an independent probable cause determination that O'Neil was either living or storing records at the Palatine address is the necessary nexus between his suspected criminal activity at the seven (7) other locations (for which searches were properly authorized) and probable cause to believe that evidence of his suspected criminal activity may have been found at the Palatine address."

[3]A party's violation of the technical requirements of RAP 10.3 for setting out assignments of error does not preclude review where the nature of the challenge is clear and the findings being challenged are set forth in the appellate brief. *State v. Moore*, 73 Wn. App. 789, 795, 871 P.2d 642 (1994); *State v. Estrella*, 115 Wn.2d 350, 355, 798 P.2d 289 (1990). Here, the State's challenge is to the court's legal conclusions. We are exercising our discretion to review an issue that is clear from the briefs, fully briefed and argued by both sides. RAP 1.2(a) (rules liberally interpreted to promote justice.)

the warrant affidavit was insufficient to establish probable cause the dissent cites facts which are not in the affidavit. Finding of fact 9. Material omissions in the affidavit in support of a search warrant do not invalidate the warrant if the affidavit as submitted establishes probable cause to search and the omission was not made either intentionally or with reckless disregard for the truth. *State v. Cord*, 103 Wn.2d 361, 368-69, 693 P.2d 81 (1985); *State v. Garrison*, 118 Wn.2d 870, 872, 827 P.2d 1388 (1992) (the *Franks v. Delaware*, 438 U.S. 154, 57 L. Ed. 2d 667, 98 S. Ct. 2674 (1978) test for material misrepresentations applies to allegations of material omissions). Here, the court did not hold a *Franks* hearing and did not consider the alleged material omissions from the warrant affidavit. Thus, although we are aware of the dissent, in our analysis we consider only the affidavit on its face.

■ ■ We consider whether the affidavit on its face contained sufficient facts for a finding of probable cause. Issuance of a search warrant is a matter of judicial discretion, and reviewing courts give great deference to the magistrate's determination of probable cause, reviewing that determination only for an abuse of that discretion. *State v. Seagull*, 95 Wn.2d 898, 907, 632 P.2d 44 (1981). We resolve doubts by according preference to the validity of the warrant. *State v. Chasengnou*, 43 Wn. App. 379, 387, 717 P.2d 288 (1986).

■ ■ "An affidavit is sufficient to establish probable cause for a search if it contains facts from which an ordinary, prudent person would conclude that a crime had occurred and evidence of the crime could be found at the location to be searched." *State v. Stone*, 56 Wn. App. 153, 158, 782 P.2d 1093 (1989), *review denied*, 114 Wn.2d 1013 (1990). Even when there is probable cause to believe that a person has committed a crime, it does not automatically follow that there is probable cause to search his or her house for evidence of that crime. *United States v. Freeman*, 685 F.2d 942, 949, *reh'g denied*, 689 F.2d 190 (5th Cir. 1982). "[F]acts must exist in the affidavit which establish a nexus between the house to be searched and the evidence sought. . . . [T]hat

nexus may be established either through direct observation or through normal inferences as to where the articles sought would be located." *Freeman*, 685 F.2d at 949.

> [A] warrant may be upheld when the nexus between the items to be seized and the place to be searched rests not upon direct observation, but on the type of crime, nature of the items, and normal inferences where a criminal would likely hide contraband.

*State v. Gross*, 57 Wn. App. 549, 554, 789 P.2d 317 (quoting *United States v. Dubrofsky*, 581 F.2d 208, 213 (9th Cir. 1978) (affidavit was sufficient to establish probable cause because it is likely that heroin importers have contraband and related paraphernalia where they live, even though no contraband or paraphernalia was directly connected to defendant's home)), *review denied*, 115 Wn.2d 1014 (1990).

■ Thus, a nexus is established between a suspect and a residence if the affidavit provides probable cause to believe the suspect is involved in drug dealing and the suspect is either living there or independent evidence exists that the suspect may be storing records, contraband, or other evidence of criminal activity at the residence. *Freeman*, 685 F.2d at 949-50 (quoting *United States v. Green*, 634 F.2d 222, 226 (5th Cir. 1981)); *Gross*, 57 Wn. App. at 554 (citing with approval *Freeman*); *United States v. Ayers*, 924 F.2d 1468, 1479 (9th Cir. 1991).

This case involves allegations that Defendant O'Neil was engaged in ongoing drug trafficking. Hagar and Bryan do not dispute that the affidavit established probable cause to believe:

1. O'Neil was involved in multiple ongoing marijuana grow operations;

2. Individuals involved in marijuana manufacture typically maintain documentation of their cultivation and sales activity;

3. They attempt to shield the profits from their illegal activities by keeping fictitious business records, and by placing assets in the names of others;

4. They secret contraband, including the proceeds of drug sales and records of drug transactions, in secure locations, premises under their dominion and control.

Nor do they dispute the affidavit provided sufficient probable cause to authorize the search of three of the four houses, two businesses, a vehicle and a storage unit.

The issue here is limited to whether the affidavit contained sufficient information to establish probable cause to search the Palatine address. Few places are more convenient for hiding contraband or evidence of criminal activity — and, therefore, more appropriate to search — than the suspect's home. The affidavit contained no evidence of any criminal activity at the Palatine address; authorization for search of the 7222 Palatine Avenue North residence was based upon an inference that Defendant O'Neil resided there, and thus, evidence of criminal activity would be found there. The affidavit indicated that various documents listed O'Neil's address as 7222 Palatine Avenue North:

(1) Tax records show O'Neil owns the residence at 7222 Palatine Ave. N.

(2) O'Neil owns a vehicle registered with the 7222 Palatine Ave. N. address. O'Neil owned another vehicle which listed his business address.

(3) O'Neil's current Washington State driver's license shows his address to be 7222 Palatine Ave. N.

(4) Utility records for 10208 15th Avenue N.E. listed the owner as Thomas O'Neil, living at 7222 Palatine Avenue North.

(5) On February 26, 1993, while touring the Mountlake Terrace condominium, belonging to O'Neil's parents, the officer noted it was sparsely furnished. She observed mail, papers and checks addressed to O'Neil at his business address and his residence at 7222 Palatine Ave. N.

(6) While touring the condominium, the officer spoke with a real estate agent who told her that O'Neil was temporarily staying there while it was for sale, but his actual residence was elsewhere.

The court found that neither O'Neil nor any of his vehicles was ever observed at the Palatine address during the 2-month police investigation. The affidavit indicates a number of occasions in which police observed O'Neil at other locations for which the warrants were issued; however, it does

not indicate continuous surveillance of O'Neil, and there was no reference to any surveillance at the Palatine address. The fact that the affidavit does not mention seeing O'Neil at the Palatine address is irrelevant since there is no indication that police performed surveillance there.

The affidavit established probable cause to believe that marijuana grow operations were in place at 10208 15th Avenue N.E. and 611 N.W. 76th Street, both of which were owned by O'Neil. He was observed at both locations. The affidavit indicated that suspect Porter was living at and was responsible for the electric bill at 10208 15th Ave. N.E. since November 10, 1991; the owner is O'Neil with an address at 7222 Palatine Ave. N. The residence at 611 N.W. 76th was being rented to another suspect, O'Neil's brother, Richard O'Neil; O'Neil was the landlord. The affidavit also indicates that O'Neil was only temporarily residing at his parents' condominium, 23409 Lakeview Drive, Mountlake Terrace, while it was being sold. Since a person may maintain a permanent residence while temporarily house sitting his parents' home, O'Neil's temporarily living at the condominium does not negate the probability that he was storing records, contraband, or other evidence of criminal activity at his permanent residence. They certainly would not be stored at the condominium because it was for sale and real estate agents and potential buyers were likely to be entering and inspecting the premises at any time. Since the affidavit indicated that O'Neil's residence was 7222 Palatine Ave. N., he did not live at either 611 N.W. 76th or 10208 15th Ave. N.E., and he was only temporarily staying at the Mountlake Terrace condominium, a reasonably prudent person could conclude that evidence of O'Neil's drug activities could be found at his permanent residence, 7222 Palatine Avenue North. The issuing judge did not abuse his discretion in authorizing the search of 7222 Palatine Avenue North.

We reverse the trial court's decision, finding probable cause to search the Palatine address, and remand for trial.

Agid, J., concurs.

SCHOLFIELD, J. (dissenting) — The majority opinion reverses the trial court's order suppressing evidence obtained pursuant to the execution of a search warrant at 7222 Palatine Avenue North (hereinafter the Palatine address). The majority acknowledges that the issue here is "limited to whether the affidavit contained sufficient information to establish probable cause to search the Palatine address." Majority, at 826. I have no quarrel with the authorities cited by the majority. The narrow issue is whether the affidavit established a probability that O'Neil was living at the Palatine address or set forth independent evidence that he was using a house where he was not living to store confidential records of his marijuana grow operations.

This case arises out of an investigation of Thomas O'Neil which began on January 14, 1993, when the police received a tip from a confidential informant, and continued through the application for and issuance of the search warrant on March 10, 1993. The issue in this appeal is narrow because after 2 months of intense surveillance of all the properties owned by O'Neil and listed in the search warrant and of the day-to-day activities of O'Neil and his Codefendants, no evidence of any kind was ever developed indicating any criminal activity at the Palatine address. O'Neil was personally observed many times going to the other addresses listed in the search warrant affidavit, but neither O'Neil nor his automobile was ever observed at the Palatine address. From their extensive investigation, police detected the smell of growing marijuana coming from some of the other addresses, noted above normal power usage in respect to other addresses, and observed drawn blinds indicating a desire for secrecy at other addresses, but no evidence of this type was ever developed as to the Palatine address. Thus, the prosecution had no way of tying O'Neil or his Codefendants to the Palatine address, other than the fact that he owned it and formerly had used it as his personal residence.

There was no evidence O'Neil lived at the Palatine address at any time during the 2-month investigation. In fact, the evidence was to the contrary. The State concedes,

and the trial court found as a fact (which the State does not dispute), that respondents Regan Hagar and Leigh Bryan were living at the Palatine address at all times during the investigation. The trial court found in finding of fact 9(1) and (2) that the power records for the Palatine address were in Hagar's name from June 1, 1992, through the date in March 1993 when the police sought the search warrant. Those same records for the Palatine address list O'Neil as the landlord, not as a resident. The trial court also noted in its findings of fact that Hagar and Bryan were not named as suspects or in any other capacity in the 28-page affidavit in support of the warrant to search their residence at the Palatine address.

The search warrant affidavit also reflects knowledge on the part of the affiant that O'Neil was actually living in his parents' condominium in Mountlake Terrace and was seen there on numerous occasions before the police sought the search warrant. The State argued that the search warrant affidavit provided an adequate basis for inferring that O'Neil lived at the Palatine address, even though the State conceded that he was seen many times going in and out of the condominium in Mountlake Terrace and was never seen at the Palatine address. Despite this evidence to the contrary, and despite the total absence of any evidence of criminal activity at the Palatine address, the majority opinion asserts that the search was valid because it was "based upon an inference that Defendant O'Neil resided there, and thus, evidence of criminal activity would be found there." Majority, at 826. The majority opinion states that "[t]he fact that the affidavit does not mention seeing O'Neil at the Palatine address is irrelevant since there is no indication that police performed surveillance there." Majority, at 827. This statement, however, is contrary to the record made during the hearing on the motion to suppress. In that hearing, the prosecutor acknowledged that the officers often drove by the Palatine address. The trial judge noted that in their report, the officers stated they could not detect an odor of marijuana at the Palatine address, the drapes were open, and the

house gave every appearance of being a normal residence. The prosecutor acknowledged on the record, "That's true. As far as the surveillance, they sat on the Palatine address for an extensive period of time." It is true that the search warrant affidavit does not describe surveillance at the Palatine address. However, from the extensive police surveillance of O'Neil's and the other Codefendants' activities, and from the intense surveillance of the other addresses listed in the search warrant, it is obvious that the reason the Palatine address is not mentioned in the affidavit is that the police were unable to develop incriminating evidence at that address.

For example, on January 27, 1993, a radio transmitter was installed for the purpose of tracking the movements of Codefendant Craig Porter. The search warrant affidavit indicates that Porter's full-time job was to oversee and tend to O'Neil's marijuana grow operations. While the radio transmitter was in place, Porter did not go to the Palatine address. Had he done so, we can be confident this information would have made its way into the search warrant affidavit.

The majority opinion strains to reach the conclusion that even though O'Neil was not actually living at the Palatine address and was staying at his parents' condominium until it was sold, the Palatine address, rather than the condominium, was nevertheless a logical place for O'Neil to store his confidential records. The majority overlooks the following evidence from the search warrant affidavit indicating that O'Neil did keep records at the condominium while he was staying there. "Rock Candy" is a nightclub business apparently owned by O'Neil and located at 1812 Yale Avenue North. On February 9, 1993, while the police had Rock Candy under surveillance, they observed O'Neil arrive at the back door of the nightclub in his 1992 Cadillac. He entered Rock Candy with another man and came out carrying two legal-size white boxes which he placed in the back of his car. The other man came out with a similar box and placed it in the trunk of the car. O'Neil then drove to 2401 — 10th East,

which the search warrant affidavit indicates contained 1,250 square feet of cold storage space. From that location, O'Neil took another box similar to the type taken from Rock Candy and placed it in his Cadillac. He then drove to the condominium in Mountlake Terrace. The Cadillac was observed parked near the door of the condominium with the trunk open and the passenger side door open. The search warrant affidavit recites that Officer Duenas observed O'Neil carrying a box similar to the boxes placed in his car from the car to the condominium.

On February 26, 1993, two officers went on a tour of the Mountlake Terrace condominium and, while there, observed two legal-size boxes and a lock box in the condominium. They also learned that the condominium has two storage facilities, one at the back door and one by the covered parking lot.

In discussing the possibilities of storing confidential records, the majority opinion states, "They certainly would not be stored at the condominium because it was for sale and real estate agents and potential buyers were likely to be entering and inspecting the premises at any time." Majority, at 827. This statement is contrary to evidence strongly indicating that records of some kind were being kept by O'Neil at the condominium while he was living there and that facilities were available to preserve confidentiality.

While O'Neil at one time identified his residence as the Palatine address in his automobile registration, the trial court found that the most recent registration dated December 15, 1992, listed his address as 1812 Yale Avenue North.

It is noteworthy that the search warrant affidavit completely omitted some of the evidence pointing to a lack of probable cause for a search of the Palatine address. These facts involve the power records from the Palatine address where the resident is listed as Regan Hagar from June 1, 1992, to the date of the warrant; the fact that the power records for the Palatine address listed O'Neil as the landlord; the fact that the most recent Washington vehicle registration records for O'Neil's 1992 Cadillac listed his address as 1812 Yale Avenue North; that the police were told that

O'Neil was living in the condominium in Mountlake Terrace; that O'Neil was never observed by the police coming from or going to the Palatine address; and that the investigating officers were unable to acquire evidence of suspected criminal activity at the Palatine address during 2 months of intensive surveillance.

The State does not challenge any of the findings of fact entered by the trial court in its July 29, 1993, suppression order. As recited above, those findings clearly supported the trial court's conclusion that the search warrant affidavit did not establish probable cause that criminal activity was being conducted at the Palatine address or that there was probable cause that Defendant's business records would be located at that address.

For these reasons, the decision of the trial court should be affirmed.

After modification, further reconsideration denied September 15, 1994.

Review denied at 125 Wn. 2d 1016 (1995).