[No. 40334-6-I. Division One. June 22, 1998.]

THE STATE OF WASHINGTON, *Respondent*, v. STEPHEN ANTHONY THEIN, *Appellant*.

---

478

*Jeffrey Steinborn* of *Steinborn & Associates*, for appellant.

*Norm Maleng, Prosecuting Attorney*, and *Shannon D. Anderson, Deputy*, for respondent.

AGID, A.C.J. — Stephen Thein appeals his convictions for possession of marijuana with intent to deliver and defrauding a public utility, arguing that the search warrant obtained by police to search his residence was overbroad and not supported by probable cause. The informants' statements established Thein's status as the landlord, drug supplier and sole occupant of the basement of a house in which police found his residence address and marijuana grow equipment when they served a search warrant on one of Thein's customers/drug sellers. This supplied sufficient probable cause to support the warrant to search Thein's residence. Even if we assume the warrant was overbroad because there was no evidence Thein sold other drugs, we can sever the arguably offending language authorizing a search for all "controlled substances." In any event, the warrant authorized a search for money, weapons and records of sales, all of which would likely be found in the same places as other drugs. Because there was a sufficient nexus between Thein's activities and his residence and the warrant did not authorize a general search, it was valid and we affirm the conviction.

FACTS

On April 14, 1995, King County Narcotics Task Force of-

ficers served a search warrant on Thein's residence at 3921 S.W. Austin in Seattle where they discovered a large marijuana grow operation and a power diversion. Prior to trial, Thein moved to suppress the results of that search on the ground that the warrant was not supported by probable cause. The affidavit on which the search warrant was based recited that on April 13, 1995, police had served a search warrant on a residence at 316 S. Brandon and placed the resident, Laurence McKone, under arrest after finding approximately half a pound of marijuana in a freezer and materials commonly used to package it nearby.[1] In a storage area in the basement of 316 S. Brandon, adjacent to an area that served as a wood workshop, police also found materials commonly associated with cultivating marijuana, including grow lights, plant trays, fertilizer, potting soil, and a humidifier. Next to the materials they found a packing slip for a "Clean-air" system indicating that it had been shipped to "Stephen Thein, 316 So. Brandon" six months earlier. In the woodworking portion of the shop, police found a receipt on a work bench from the Tacoma Screw Company with the address "3921 S.W. Austin" written on it. Police also found several boxes of nails under the work bench; Steve Thein's name and the S.W. Austin address was on one of the boxes. Upstairs in the residence, police found money orders from McKone to Thein with the notation "rent."

The affidavit went on to recite that, after finding these items, police contacted the Department of Licensing and learned that "Steve Thein" was the registered owner of a 1994 Toyota pickup truck. Police had found two boxes of oil filters in the basement marked "Toyota" along with a used oil filter in a plastic bag that contained potting soil. Police read McKone his rights but he declined to give them any information about Thein. While police were there, Michael Terebesi, a neighbor, came by and told them that McKone's

---

[1] The affidavit in support of the search warrant obtained for McKone's residence was attached to and incorporated into the affidavit in support of the search warrant for Thein's residence.

source for marijuana was a white male approximately 40 years old who drove a black Lexus and periodically visited 316 S. Brandon. A little later, Sheila Hegge arrived to buy marijuana and told police that McKone's supplier was his landlord who was a man named "Steve."[2] She told police McKone met Steve through an old boyfriend of hers 11 years earlier and that only Steve used and controlled the basement area of the house. She also stated that she had seen Steve drive a black Lexus to 316 S. Brandon. The affidavit recited that Don Mitchell, the citizen informant who gave police the tip on which the search warrant for 316 S. Brandon was based, also told police that the landlord drove a black Lexus-type vehicle. When police checked with the Department of Licensing a second time, they learned that Thein was the registered owner of a black 1994 Acura Legend and that his address was listed as 3921 S.W. Austin. In his affidavit supporting the 316 S. Brandon search, Mitchell also said McKone told him he would be getting another supply of marijuana soon.

In addition to facts specific to Thein, the affidavit also included a number of general observations about the habits of marijuana growers based on the affiant police officer's training and experience. For example, the affidavit stated that

- It is common for marijuana growers to secret contraband, proceeds of sales and records of transactions in secure locations within their residences for ready access, and to conceal them from police.

- Persons involved in large scale marijuana growing operations often conceal within their residence, caches of drugs, large amounts of cash, financial instruments . . .

Based on the facts in the affidavit, the officer stated he believed Thein was currently involved in the manufacture

---

[2]The information that "Steve" was McKone's landlord was arguably contradicted by other information police had (described in the affidavit submitted in support of the search warrant for McKone's residence) which identified the owner as a Mrs. Ray Bade, but it was supported by the money orders found in McKone's residence.

and distribution of marijuana and that evidence of that activity was located at his residence at 3921 S.W. Austin. The search warrant authorized police to search both Thein and his residence at 3921 S.W. Austin and to seize the following:

*Controlled substances, including but not limited to* marijuana including all containers, implements, fruits of the crime, fixtures used or kept for illegal manufacture, sale, barter, exchange, furnishing or otherwise disposing of said controlled substances; evidence of ownership to such property or rights of ownership or control of said property; narcotics records including any notebooks or written instruments associated with the manufacture, sale, exchange and furnishing of narcotic substances; any firearms found in violation of RCW 9.41.098(c).

The trial court denied Thein's motion to suppress. At the conclusion of a trial on stipulated facts, the court found Thein guilty of one count of possession of a controlled substance with intent to deliver and one count of defrauding a public utility.

## DISCUSSION
### 1. Overbreadth of Warrant

 Thein argues that the search warrant was constitutionally overbroad because by authorizing officers to search for drugs other than marijuana, it allowed a general search that exceeded any probable cause established in the affidavit supporting the search warrant. A search warrant must describe the items to be seized with particularity.[3] "The purposes of the search warrant particularity requirement are the prevention of general searches, prevention of the seizure of objects on the mistaken assumption that they fall within the issuing magistrate's authorization, and the prevention of the issuance of warrants on loose, vague, or

---

[3]*State v. Perrone*, 119 Wn.2d 538, 545, 834 P.2d 611 (1992).

doubtful bases of fact."[4] The particularity requirement is intended to prevent " 'general, exploratory rummaging in a person's belongings' " by law enforcement officials.[5] We examine the warrant de novo and must evaluate it in a commonsense, practical way rather than being hypertechnical.[6] Where there is a logical, reasonable basis for redacting an overbroad portion of the warrant, it may be severed from the remaining valid portion and evidence seized based on the latter is not subject to the exclusionary rule.[7]

■ Even if we assume the warrant was too general, there is no reason not to sever the arguably overbroad phrase "controlled substances, including but not limited to" from the remainder of the search warrant.[8] This is not a case like *Perrone* involving materials presumptively protected by the First Amendment "where extensive 'editing' throughout the clauses of the warrant is required to obtain potentially valid parts."[9] Here, redacting the warrant to exclude seven words neither renders it meaningless nor reduces the valid portion to an "insignificant part" of the warrant when compared to the redacted portion.[10] As redacted, the warrant clearly authorizes the police to do exactly what they, in fact, did: search for marijuana, items used to grow and distribute it, records and proceeds of the

[4]*Id.* (citing 2 WAYNE R. LaFAVE, SEARCH AND SEIZURE § 4.6(a), at 234-36 (2d ed. 1987)).

[5]*Id.* (quoting *Andresen v. Maryland*, 427 U.S. 463, 480, 96 S. Ct. 2737, 49 L. Ed. 2d 627 (1976)).

[6]*Id.* at 549.

[7]*Id.* at 560 (citing *United States v. Christine*, 687 F.2d 749, 758 (3d Cir. 1982) and *United States v. Ventresca*, 380 U.S. 102, 108, 85 S. Ct. 741, 13 L. Ed. 2d 684 (1965)).

[8]We assume for purposes of this analysis that the warrant was overly general because there was no evidence that Thein dealt other drugs. However, we agree with the analysis in *State v. Chambers*, 88 Wn. App. 640, 644, 945 P.2d 1172 (1997), to the effect that the particularity requirement may be satisfied with more general language where the search is for "contraband or inherently illicit property" like controlled substances.

[9]*Perrone*, 119 Wn.2d at 560.

[10]*Id.* at 557.

operation and weapons that may be associated with protecting it.

While we join Division II of this court in urging more precision in wording search warrants,[11] even for controlled substances, we hold that this is a proper case for severing the general from the specific terms of the warrant. As redacted, it does not authorize a broad, general search that offends the Fourth Amendment or Article I, Section 7 of the Washington Constitution.[12]

2. Nexus Between Suspected Crime and 3921 S.W. Austin

In determining the validity of a search warrant, we consider whether the affidavit on its face contained sufficient facts for a finding of probable cause.[13] While great deference is accorded a magistrate's determination of probable cause, that deference is not boundless. Courts will not defer to a magistrate's decision when it is based on information insufficient to establish probable cause.[14] An affidavit is sufficient to establish probable cause to support a search if it contains facts from which an ordinary, prudent person would conclude that a crime has occurred and evidence of the crime could be found at the location to be searched.[15]

Thein argues that the affidavits supporting the warrant to search his house do not establish a nexus between this residence and the suspected drug trafficking.[16] " '[T]hat nexus may be established either through direct observation or through normal inferences as to where the articles

---

[11]*Chambers*, 88 Wn. App. at 648

[12]We also agree with the State's observation that, because the warrant properly authorized police to look for papers, records and weapons, they could legitimately search drawers and smaller containers than those associated with growing and storing large quantities of marijuana. These are the same places one would expect to find caches of other controlled substances like cocaine, heroin and prescription drugs.

[13]*State v. O'Neil*, 74 Wn. App. 820, 824, 879 P.2d 950 (1994), *review denied*, 125 Wn.2d 1016 (1995).

[14]*State v. Cord*, 103 Wn.2d 361, 365-66, 693 P.2d 81 (1985); *State v. White*, 44 Wn. App. 215, 218, 720 P.2d 873 (1986), *review denied*, 107 Wn.2d 1020 (1987).

[15]*O'Neil*, 74 Wn. App. at 824.

[16]*Id.*

sought would be located.' "[17] For that reason, a "warrant may be upheld when the nexus between the items to be seized and the place to be searched rests not upon direct observation, but on the type of crime, nature of the items, and normal inferences [about] where a criminal would likely hide contraband."[18]

 ██ Washington courts have held that "a nexus is established between a suspect and a residence if the affidavit provides probable cause to believe the suspect is involved in drug dealing and the suspect is either living there or independent evidence exists that the suspect may be storing records, contraband, or other evidence of criminal activity at the residence."[19] But the general observations must be based on some specific facts which support an inference that the particular individual is involved in drug dealing and evidence of that activity is likely to be found at the place to be searched.[20]

While generalizations about the typical behavior of drug traffickers aid in interpreting facts and determining what is a reasonable inference, they do not serve as a substitute for adequate investigation and facts specific to the particular individual whose residence is the subject of the search warrant. Some police officers have testified that drug traffickers typically keep relevant evidence in their homes; other officers who are familiar with the practices of drug

---

[17]*O'Neil*, 74 Wn. App. at 824-25 (quoting *United States v. Freeman*, 685 F.2d 942, 949 (5th Cir. 1982)).

[18]*Id.* at 825 (quoting *State v. Gross*, 57 Wn. App. 549, 554, 789 P.2d 317, *review denied*, 115 Wn.2d 1014 (1990)).

[19]*Id.* (citing *Freeman*, 685 F.2d at 949-50; *Gross*, 57 Wn. App. at 554; *United States v. Ayers*, 924 F.2d 1468, 1479 (9th Cir. 1991)).

[20]*State v. Goble*, 88 Wn. App. 503, 506, 945 P.2d 263 (1997) (package known to contain methamphetamine carried into suspect's home); *O'Neil*, 74 Wn. App. at 825-26 (extensive evidence of ongoing drug trafficking in a number of different locations supported inference that records were kept at a single central location); *Gross*, 57 Wn. App. at 554 (mail describing drug trafficking activity and requesting payment, presumably by mail, tied to suspect's home).

traffickers have also testified in court that the opposite may be true.[21]

While somewhat circuitous, the two affidavits the issuing magistrate considered did contain evidence which, when combined with logical inferences, made it more likely than not that evidence of marijuana distribution and/or a growing operation would be found at Thein's house. First, taken together, the statements of the three informants were sufficient to establish that Thein was involved in distributing marijuana.[22] Those statements together told the magistrate that "Steve" was the landlord who had sole control over the basement of the 316 S. Brandon house and that the landlord was McKone's marijuana source. Mitchell also told police McKone said he would be getting a new shipment from his supplier soon. All three informants said "Steve" drove a black Lexus-type car. When police checked with the Department of Motor Vehicles, they discovered that Thein owned a black Acura, a car similar to a Lexus.

Second, when police searched the part of the house over which the landlord had sole control, they found many items commonly associated with marijuana grow operations and at least two items with Thein's name and the S.W. Austin address on them. One of those, the receipt for the "Clean-air" system delivered to Thein's home, was for equipment

---

[21]*See, e.g., State v. Gonzales*, 78 Wn. App. 976, 980, 900 P.2d 564 (1995) ("individuals who deal large amounts of illegal substances typically do not keep them on their person or in their homes"), *review denied*, 128 Wn.2d 1020 (1996). *Gonzales* illustrates the problem with relying on generalizations rather than facts specific to the suspect and his activities. Police cannot rely on generalizations about what is "typical" that are opposite to one another depending on what kind of search warrant they want to get. Two opposites can't both be "typical", even if sometimes one and sometimes the other is true in specific circumstances.

[22]*See, State v. Lair*, 95 Wn.2d 706, 709-10, 630 P.2d 427 (1981) (veracity prong established by showing an informant has previously supplied accurate information) (Don Mitchell); *State v. Kennedy*, 107 Wn.2d 1, 8, 726 P.2d 445 (1986) (citizen informants generally reliable) (Michael Terebesi); *State v. Gunwall*, 106 Wn.2d 54, 72, 720 P.2d 808 (1986) (statement against penal interest makes informant's information more reliable) (Sheila Hegge); *State v. Jackson*, 102 Wn.2d 432, 437, 688 P.2d 136 (1984) (the basis of knowledge prong of the *Aguilar-Spinelli* [*Aguilar v. Texas*, 378 U.S. 108, 84 S. Ct. 1509, 12 L. Ed. 2d 723 (1964); *Spinelli v. United States*, 393 U.S. 410, 89 S. Ct. 594, 21 L. Ed. 2d 637 (1969)] test requires explanation of how informant claims to have gotten the information provided).

commonly associated with cultivating marijuana, an item made necessary by the plants' rather distinctive odor. When they found the money orders from McKone to Thein for "rent," there could be little doubt that he was the landlord/marijuana supplier about whom the informants had spoken.

Even without relying on the generalized statements about drug dealers' habits in the affidavits, two logical inferences from evidence police already had establish probable cause to believe evidence would be found at 3921 S.W. Austin. Thein was a supplier, but no grow operation or large supply was found in the basement of 316 S. Brandon. Therefore, it was likely that the source of the marijuana "Steve" used to supply McKone would be found at the other place Thein controlled—his home. If McKone was expecting another supply from his source soon, it was likely that the supplier had it or evidence of his ability to deliver it at the only other place anyone knew it could be—his home.

The proximity of the air cleaner receipt to the other marijuana grow evidence coupled with Thein's sole control of the basement establish a connection between Thein and a marijuana grow operation at this home. His position as McKone's supplier, from whom McKone was expecting an imminent delivery, and the absence of a grow operation or any marijuana supply other than what McKone already had at 316 S. Brandon, establish the probability that the supply was located at the address found in the landlord's basement. These facts and the logical inferences from them supply sufficient probable cause to believe there was evidence of Thein's drug activities at his home. The warrant was valid.

To illustrate a point, we have not relied on the affidavit's general statements about drug dealers' habits in performing this analysis. Thein contends that it appears police, perhaps in reliance on our opinions in *Gross* and *O'Neil*,[23] have substituted these generalized statements for the investigation necessary to establish a nexus between drug

---

[23]*Gross*, 57 Wn. App. 549; *O'Neil*, 74 Wn. App. 820.

dealing and the place they want to search. We agree. Here, police certainly had sufficient information to justify further investigation of Thein's residence. They could have obtained power records and/or asked the power company to investigate whether power was being diverted. They could also have observed the appearance of his home to determine whether there were blocked windows, the smell of growing marijuana or other indicia of a grow operation.[24] But the affidavit does not reflect that police conducted any further investigation to determine either the extent of Thein's drug trafficking activities or to identify facts what would support the inference that there was a nexus between those activities and his home. Because, as the *Gonzales* case illustrates, general statements about drug dealers' habits can go two ways, we encourage police and magistrates who issue search warrants to require more investigation into the particular suspect and where evidence of drug activity may be located rather than relying too heavily on the officers' general experience in issuing a search warrant. Had they done so here, this appeal would not have been necessary.

Affirmed.

BAKER and ELLINGTON, JJ., concur.

Review granted at 137 Wn.2d 1001 (1999).

---

[24]*Cf. State v. Cole*, 128 Wn.2d 262, 288-89, 906 P.2d 925 (1995).