963 P.2d 881 (1998)
STATE of Washington, Respondent,
v.
Robert Derek PEREZ, Appellant.
No. 40744-9-I.
Court of Appeals of Washington, Division 1.
July 6, 1998.
Publication Ordered September 14, 1998.
*883 Elise Naomi Gautama, Washington Appellate Project, Seattle, for Appellant.
James Edwin Rogers, King County Deputy Prosecuting Attorney, Appellate Unit, Seattle, for Respondent.
*882 AGID, Acting Chief Judge.
Robert Perez appeals his conviction for possession of cocaine with intent to deliver. He argues that the trial court erred in denying his motion to sup-press bcause the affidavit in support of the search warrant did not contain facts sufficient to establish a nexus between the suspected criminal activity and his home. He also contends that the information contained in the affidavit was stale. Because the affidavit contained abundant facts establishing a nexus between the suspected drug activities and the Perez home, none of which was stale, we affirm.

FACTS
On November 11, 1994, Seattle police detectives executed a search warrant for a house at 3021 SW Thistle in Seattle. The warrant was based on an affidavit by Detective David C. Unger who was conducting an investigation into the activities of Agapito Avila-Arias, aka "Felix." Based on observations made in the course of that investigation, Detective Unger believed that 3021 SW Thistle was a "safe-house" used by Felix to store drugs and money. When police served the search warrant and entered the house, they encountered Robert Perez and Regina Villalovos. Perez told police where both cocaine and money were located. Police found 60 grams of cocaine, $8,200 in cash and a .40 caliber Glock semiautomatic pistol on the premises. Perez admitted he was holding the cash for his wife's brother-in-law, the man known to police as "Felix." He also admitted he had been selling cocaine for about two months.
On January 3, 1996, Perez was charged with possession of cocaine with intent to deliver. At the CrR 3.6 hearing held October 10, 1996, Perez moved to suppress the evidence seized at 3021 SW Thistle on the ground that the search warrant was invalid. The trial court denied his motion. Perez was convicted as charged.

DISCUSSION

I. Nexus
In determining the validity of a search warrant, we consider whether the affidavit on its face contained sufficient facts for a finding of probable cause.[1] An affidavit is sufficient to establish probable cause to support a search if it contains facts from which an ordinary, prudent person would conclude that a crime has occurred and that evidence of the crime could be found at the location to be searched.[2] We examine the warrant de novo and evaluate it in a commonsense, practical manner, rather than hypertechnically.[3] Issuance of a search warrant is a matter of judicial discretion, and great deference is accorded a magistrate's determination of probable cause.[4] That deference, however, is not boundless and we will not defer to a magistrate's decision if the information on which it is based is not sufficient to establish probable cause.[5] We resolve any doubts in favor of the validity of the warrant.[6]
*884 Perez contends there was insufficient evidence to support the search warrant because the facts did not establish a nexus between Felix and 3021 SW Thistle. An affidavit in support of a search warrant must state facts which establish a nexus between the place to be searched and the evidence sought.[7] Washington courts have held that "a nexus is established between a suspect and a residence if the affidavit provides probable cause to believe the suspect is involved in drug dealing and the suspect is either living there or independent evidence exists that the suspect may be storing records, contraband, or other evidence of criminal activity at the residence."[8] "`That nexus may be established either through direct observation or through normal inferences as to where the articles sought would be located.'"[9] For that reason, "a warrant may be upheld when the nexus between the items to be seized and the place to be searched rests not upon direct observation, but on the type of crime, nature of the items, and normal inferences [about] where a criminal would likely hide contraband."[10]
Perez argues that the required nexus was not established because there were no facts in the affidavit to support the inference that Felix used 3021 SW Thistle as a safe house. We disagree. First, the affidavit recites that police received information from a reliable informant[11] within two weeks before the warrant was issued about a large quantity cocaine dealer known as Felix.[12] The informant gave police Felix's pager number and told them that when Felix is paged, he will bring only the amount of cocaine needed and meet the customer at various locations to complete the transaction. Police directed the informant to page Felix and arrange a controlled buy. Felix returned the page and a narcotics transaction was arranged. Police established surveillance at the location where it was to take place. The informant completed a successful controlled buy. Police then followed Felix as he drove directly to 9816 20th SW # 101 where surveillance ended thirty minutes later. Police observed his pickup parked near # 101 several times during the next couple of days.
Four days before the warrant was issued, the same informant contacted Detective Unger and told him that Felix was contacting his customers and telling them he had just received a large shipment of narcotics. The following day, police saw Felix leave # 101 alone and again asked the informant to page him to request narcotics. The informant did so. Felix returned the page and agreed to a time and location for the narcotics transaction. Following this page, Felix drove directly to 3021 SW Thistle and entered the house. After about 10 minutes he left the house alone and drove directly to a house at 9445 25th SW, a prior address for Avila-Arias at which a vehicle belonging to John Villalovos Jr. had been parked within the previous couple of days. Felix entered the house, left again a short time later, and drove directly to the location at which he had agreed to meet the informant. A second successful controlled buy was completed. Felix then drove directly back to 3021 SW Thistle and again entered the house. About 20 minutes later, he left the house with four others and drove directly to an apartment building located at 1050 SW 151st in a car registered to Robert Perez. Felix and another man entered the building on foot. Felix emerged about 15 minutes later and got back into the car. Police then followed it directly to the corner of 4th Ave. S. and S. Michigan where Felix and two others got out of the car, met another person, and walked to a car in the parking lot which they entered. They drove that car directly to 3021 SW Thistle where Felix got out of the car and into his pickup. Both vehicles then drove back to the apartment building at 1050 SW 151st. This time everyone in both vehicles *885 went inside and entered a room police later determined had just been rented that morning. Felix left in his pickup about ten minutes later followed by a man in the second car. Both drove to a nearby store. Felix then left alone and drove directly to 9445 25th SW and entered the house. When he left about twenty minutes later, he drove directly to another location where an unidentified man was waiting for him. Felix parked the pickup next to the man who approached the driver's side of the vehicle. They talked for about two minutes, and police saw something pass between them. Detective Unger noted in his affidavit that this was consistent with a narcotics transaction. Felix then drove directly to 9816 20th SW # 101 where the surveillance ended. In addition to reciting these facts, the affidavit states that the quantities of narcotics sold to the informant showed that Felix was the large quantity dealer the informant had reported.
Perez's argument that these facts are insufficient to establish the required nexus between Felix's illegal drug activity and the house at 3021 SW Thistle is without merit. We agree with Perez that "standing alone, an officer's belief that [drug dealers] hide evidence at other premises under their control does not authorize a warrant to search those places."[13] In contrast to Olson, however, here the detective's belief was supported both by specific information provided to police by the informant, i.e., that Felix carries only the amount of cocaine needed for each transaction, and by their direct observations of Felix's activity following the informant's page to arrange a controlled buy. In the context of the information they had received from the informant, that pattern of activity clearly supported an inference that both 9445 25th SW and 3021 SW Thistle were safe housesplaces where Felix kept contraband, proceeds or other evidence of his drug dealing activities.[14] In addition, police were also aware, based on a prior arrest report for Agapito Avila-Arias, that there was no cocaine found in his house on the same day that he made two narcotics sales to an undercover detective. All this provided a factual basis to which the detective could apply his knowledge and experience to infer that Felix was the kind of large scale drug dealer who typically uses various locations to avoid detection of his illegal operations, products and proceeds.[15]
In addition, the informant had reported that some of Sherry Villalovos's sisters were involved in selling narcotics provided by her husband Felix. Police then discovered that a Regina Villalovos was connected with an address Sherry had previously used and that she listed Felix's current address on her Washington driver's license. These facts supported an inference that the Regina Villalovos who was billed, along with Robert Perez, for electricity at 3021 SW Thistle was one of Sherry's sisters.
All these facts, taken together, were more than sufficient to establish the required nexus between the suspected criminal activity and the house at 3021 SW Thistle.

II. Staleness
Perez also contends that the information in the warrant was stale because it is not clear whether the handwritten sentence, "[t]his information occurred within the past four days," refers to the paragraph to which it is appended. But any rational reading of the sentence and the paragraph to which it is appended clearly establishes that it refers to that paragraph. The fact that the next paragraph begins with the phrase "[w]ithin the past three days" confirms this reading.
Perez also argues that three or four days is too long to support an inference that there was still contraband on the premises. The facts and circumstances recited in the supporting affidavit must establish a reasonable probability that the criminal activity is occurring at or about the time the warrant is issued.[16] But tabulation of the intervening *886 number of days is not the final determinant of probable cause; rather, it is just one factor which is considered along with all the other circumstances including the nature and scope of the suspected criminal activity.[17] Staleness, in other words, involves not only duration but the probability that the items sought in connection with the suspected criminal activity will be on the premises at the time of the search.[18]
Here, the facts recited in the affidavit support an inference that criminal activity was occurring at 3021 SW Thistle at the time the warrant was issued. In contrast to Higby, where there was no evidence of regular drug dealing activity but only of a single sale, here both the information provided by the informant and police observations suggested that Felix was a drug dealer and that his drug dealing activities were ongoing.[19] As explained above, the facts also supported an inference that Felix used the Perez home as a safe house. Given the evidence that the suspected criminal activity was continuing, the three-day period that elapsed between the last observation described in the affidavit and the issuance of the warrant was not long enough to render the warrant invalid.
Affirmed.
NOTES
[1] State v. O'Neil 74 Wash.App. 820, 824, 879 P.2d 950 (1994), review denied, 125 Wash.2d 1016, 890 P.2d 20 (1995).
[2] O'Neil, 74 Wash.App. at 824, 879 P.2d 950.
[3] State v. Perrone, 119 Wash.2d 538, 549, 834 P.2d 611 (1992). Perez misstates the standard of review in his brief. Unless the trial court issues findings on other matters such as whether there were false statements or material omissions of fact, the trial court's findings are superfluous. O'Neil, 74 Wash.App. at 823, 879 P.2d 950 (citing State v. Estorga, 60 Wash.App. 298, 304 n. 3, 803 P.2d 813, review denied, 116 Wash.2d 1027, 812 P.2d 102 (1991)).
[4] O'Neil, 74 Wash.App. at 824, 879 P.2d 950.
[5] State v. White, 44 Wash.App. 215, 218, 720 P.2d 873 (1986), review denied, 107 Wash.2d 1020 (1987).
[6] O'Neil, 74 Wash.App. at 824, 879 P.2d 950.
[7] Id.
[8] Id. at 825, 879 P.2d 950.
[9] Id. at 824-25, 879 P.2d 950.
[10] Id.
[11] The informant's reliability and/or veracity have not been challenged on appeal.
[12] The informant also told police that some sisters and a brother of Sherry Villalovos, Felix's wife, might also be involved in the sale of narcotics Felix provided.
[13] State v. Olson, 73 Wash.App. 348, 357, 869 P.2d 110, review denied, 124 Wash.2d 1029, 883 P.2d 327 (1994).
[14] See O'Neil, 74 Wash.App. at 825, 879 P.2d 950.
[15] Id.
[16] State v. Young, 62 Wash.App. 895, 903, 802 P.2d 829, 817 P.2d 412 (1991) (a period in excess of one year cast doubt on the warrant because there was little basis for believing that the items sought would still be present).
[17] State v. Higby, 26 Wash.App. 457, 460, 613 P.2d 1192 (1980) (one sale of a small amount of marijuana did not establish probable cause to search two weeks later).
[18] Young, 62 Wash.App. at 903, 802 P.2d 829, 817 P.2d 412.
[19] Cf. State v. Bittner, 66 Wash.App. 541, 547, 832 P.2d 529 (1992) (because the affidavit did not state that the defendant was a known drug dealer and the single, unobserved transaction was not corroborated by any other evidence, a one-week delay rendered the warrant invalid), review denied, 120 Wash.2d 1031, 847 P.2d 481 (1993).