[Nos. 21583–3–I; 23365–3–I. Division One. April 16, 1990.]

THE STATE OF WASHINGTON, *Respondent,* v. CLIFFORD H. GROSS, *Appellant.*

*Jeffrey Steinborn* and *James Carbone,* for appellant.

*David L. McEachran, Prosecuting Attorney for Whatcom County,* and *Ronald Hardesty, Special Deputy; Michael E. Rickert, Prosecuting Attorney for Skagit County,* for respondent.

WEBSTER, J.—Clifford Gross challenges two search warrants, one necessary to his conviction in Whatcom County for delivering marijuana, the other supporting his conviction in Skagit County for possessing cocaine.

The Whatcom County warrant was based on a canine alert. Federal Express employees in Bellingham noticed a "suspicious" package looking just like one found to contain controlled substances earlier the same week. The package was unusually light in weight, strongly scented, and sealed at every seam with duct tape. The return address appeared

to be false. A canine was summoned in a matter of hours, and twice alerted aggressively.

## I
### DETENTION OF PACKAGE AND RELIABILITY
### OF CANINE

 Gross challenges the initial detention of the package and the dog's reliability. We reject both arguments under *State v. Stanphill*, 53 Wn. App. 623, 769 P.2d 861 (1989), which we read to uphold the brief detention of a package based on reasonable suspicion and to premise canine reliability on a statement that the dog is trained or certified, without a showing of the dog's track record. *See United States v. Klein*, 626 F.2d 22, 25–27 (7th Cir. 1980); *United States v. Venema*, 563 F.2d 1003, 1007 (10th Cir. 1977); *United States v. Meyer*, 536 F.2d 963, 965–66 (1st Cir. 1976).

> While canine–conducted narcotics searches may have encountered some judicial skepticism in the past, the technique is now sufficiently well–established to make a formal recitation of a police dog's *curriculum vitae* unnecessary in the context of ordinary warrant applications.

*United States v. Trayer*, 701 F. Supp. 250, 256 (D.D.C. 1988) (quoting *United States v. Watson*, 551 F. Supp. 1123, 1127 (D.D.C. 1982)). *See also United States v. Sentovich*, 677 F.2d 834, 838 n.8 (11th Cir. 1982) ("training of a dog is alone sufficient proof of reliability").

The transcript in support of the warrant, which was telephonic, states that the dog was "trained for the detection of marijuana, hashish, cocaine, and heroin"; "certified by the Washington State Police Canine Association and the Washington State Criminal Justice Training Commission";[1]

---

[1]The Washington State Criminal Justice Training Commission was created by the Legislature in 1974. Its purpose is "to provide programs and standards for the training of criminal justice personnel." RCW 43.101.020. The Commission has power "[t]o adopt any rules and regulations as it may deem necessary" and "[t]o do any and all things necessary or convenient to enable it fully and adequately to perform its duties and to exercise the power granted to it". RCW 43.101.080(2), (5). One specific power is "[t]o establish, by rule and regulation, standards for the

had been "utilized in cases to detect narcotics on other occasions"; and was "qualified in both local courts and in Federal courts" as an "expert narcotics dog". This is more than sufficient. Although the package was not mixed among others, as in *Stanphill,* this distinction lacks legal significance. A certified narcotics dog reacts mechanically to the scent of narcotics. *Meyer,* 536 F.2d at 966. The canine officer presumably had at least 180 hours of training in how properly to use the dog. *See* WAC 139–05–915(3)(b). Each search pattern was in an opposite direction, and each time, the dog did not alert until it encountered the package in the middle of the pattern.

## II
### SEARCH OF RESIDENCE

The Federal Express package was searched and found to contain six 1/2–pound bags of marijuana, a foil package of finger hash, and a letter addressed to "John and Cherrie" signed "Cliff".[2] The letter said future packages would be sent less frequently but in larger quantities. The mail would no longer be used because it was too dangerous. The sender believed his phone was tapped. He requested payment in checks, not cash. The box was delivered to John and Cherrie, who lived in Green Bay, Wisconsin. Cherrie said the sender was Cliff Gross who lived on McLean Road in Mount Vernon, Washington. Police confirmed that a "Clifford N. Gross" owned property at 1199 McLean Road. Based on this information, a warrant was issued to search his residence.

 Gross challenges Cherrie's basis of knowledge and credibility. Cherrie had a firsthand basis of knowledge as indicated from the fact the letter was addressed to her and

___

training of criminal justice personnel", RCW 43.101.080(8), including "dog handlers", WAC 139–05–915.

[2]The affidavit in question erroneously says the letter was signed "Cliff Gross". We ignore the misstatement because probable cause is established without regard to it.

referred implicitly to numerous previous dealings. From her faraway residence, she could not have known the surname "Gross" or connected it to the residence on McLean Road without personal knowledge. This is evident from the fact that local officers were unable to identify or locate "Cliff" without additional, nonpublic information. When the police corroborated that a "Clifford N. Gross" owned property at 1199 McLean Road, the informant's reliability and veracity were sufficiently established. *See State v. Jackson,* 102 Wn.2d 432, 438, 688 P.2d 136 (1984) (corroboration of nonpublic information relating to a crime, or of public information indicative of criminal activity, is sufficient). Veracity is also established by Cherrie's statement being against her penal interest. *See State v. O'Connor,* 39 Wn. App. 113, 119–23, 692 P.2d 208 (1984), *review denied,* 103 Wn.2d 1022 (1985). Although the State of Wisconsin already had enough evidence to prosecute her for possession of a controlled substance, she implicitly admitted previous and ongoing participation in a conspiracy to distribute by identifying the sender. She also gave the State of Wisconsin another witness, Mr. Gross, to use against her.

Gross relies on *State v. Rangitsch,* 40 Wn. App. 771, 780, 700 P.2d 382 (1985), which holds that police may not search the home of a habitual drug user based on "mere speculation" that drugs and paraphernalia will be found there. We distinguish *Rangitsch* because Gross was a known drug trafficker. This distinction recognizes that (1) drug trafficking is a much greater evil than drug use, increasing the governmental justification to search, and (2) if the homes of drug users could be searched as readily as the homes of drug traffickers, a much greater invasion of privacy would result. In *United States v. Dubrofsky,* 581 F.2d 208, 212–13 (9th Cir. 1978), a drug trafficker's city residence was searched based on the receipt of heroin at a post office box in a nearby suburb and the delivery of the heroin to a partner's house 25 miles away. Although there was no observed connection between the trafficking and the residence, the court noted:

> [A] warrant may be upheld when the nexus between the items to be seized and the place to be searched rests not upon direct observation, but on the type of crime, nature of the items, and normal inferences where a criminal would likely hide contraband.

*Dubrofsky,* at 213, *quoted with approval in State in Chasengnou,* 43 Wn. App. 379, 386, 717 P.2d 288 (1986). The court concluded, "Heroin importers commonly have heroin and related paraphernalia where they live." *Dubrofsky,* at 213. In *United States v. Freeman,* 685 F.2d 942, 949 (5th Cir. 1982), there was probable cause to believe one Boese had engaged in cocaine smuggling and that he lived at 256 Seadrift Road. The court observed,

> we can connect business records and cocaine to the Boese house because Boese was engaged in an ongoing drug smuggling operation and the most likely base of operations is his house. . . . "[F]ew places are more convenient for use in planning criminal activities and hiding fruits of a crime" than [one's] home.

*Freeman,* at 950 (quoting *United States v. Green,* 634 F.2d 222, 226 (5th Cir. 1981)).

Here, Gross revealed ongoing drug trafficking in his letter. At least one of the recipients knew he lived on McLean Road. This suggests his residence was his "business" address; there is no evidence of a second residence or other potential base of operations. He requested payment by check, presumably through the mail. "Mail is one of those items that people normally receive and keep at their places of residence." *United States v. Maestas,* 546 F.2d 1177, 1180 (5th Cir. 1977). Gross believed his phone was tapped. It is reasonable to infer he was referring to his home phone. Based on these facts, circumstances, and reasonable inferences, there was probable cause to search Gross's residence.

■ The warrant described the premises to be searched as "[a] green single story house with basement at 1199 McLean Rd.—The N.W. corner of the intersection of Best Rd. & McLean Rd. Also having a separate carport and second single story residence." Gross contends probable cause

did not extend to the second residence. Although this residence had a separate house number, 1546 Best Road, the trial court found based on photographs which are not in the record that it was "part of the premises compound" and "the defendant's property". The same inference is implicit from the warrant description. The affiant provided the description, and might just as well have put the information contained in it in the affidavit. It would exalt form over substance to ignore the inference that the second residence was part of the same premises simply because that inference appears in the warrant description as opposed to the affidavit. Thus, we treat the inference *as appearing in the affidavit* and conclude based on it that the nexus between Gross's drug trafficking and the McLean Road residence extended to his adjacent Best Road property. *See State v. Christiansen,* 40 Wn. App. 249, 698 P.2d 1059 (1985); *United States v. Olt,* 492 F.2d 910 (6th Cir. 1974).

> All that is required is that the magistrate be provided with a reference point by which to determine the probability of criminal activity. A magistrate is then entitled to make common-sense inferences from the facts and circumstances contained in the affidavit.

(Citations omitted.) *State v. Myers,* 35 Wn. App. 543, 549–50, 667 P.2d 1142 (1983), *aff'd,* 102 Wn.2d 548, 689 P.2d 38 (1984).

## III
### PHOTO MONTAGE

At trial in Whatcom County, two Federal Express employees identified Gross as the person who delivered the package containing the marijuana, hashish, and the letter. Gross contends this in–court identification should have been suppressed because a photo montage was impermissibly suggestive.

We disagree. The trial court found nothing suggestive about the montage, which contained six photos. Having viewed the photos, we concur in the court's findings. Although Gross may be heavier and older than the other persons depicted in the montage, this is not apparent from

the head and shoulder photos. His receding hairline is arguably unique, but not such as to emphasize itself in relation to the unique features in the other photos.

The judgments and sentences are affirmed.

PEKELIS and WINSOR, JJ., concur.

Reconsideration denied May 15, 1990.

Review denied at 115 Wn.2d 1014 (1990).