# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 50864-8-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| SHAWN JAMES FITZPATRICK, | |
| Appellant. | |

MAXA, C.J. – Shawn Fitzpatrick appeals his conviction of possession of a controlled substance – methamphetamine, which arose out of a traffic stop and subsequent search of the car he was driving. A law enforcement officer pulled over Fitzpatrick for speeding on Interstate 5. After a controlled substance detection dog alerted to the odor of controlled substances, an officer obtained a search warrant for the car. During the search the officers discovered methamphetamine.

We hold that the trial court did not err in denying Fitzpatrick's motion to suppress evidence obtained during the search because (1) the controlled substance detection dog's sniff around the car for controlled substance odors was not a "search" because Fitzpatrick did not have a reasonable expectation of privacy in the air outside the car; (2) the search warrant was supported by probable cause because the statements in the search warrant affidavit that the officer/handler and the controlled substance detection dog had extensive training and were

certified as a canine team established the reliability of the dog's alert to the odor of controlled substances; and (3) even assuming that substantial evidence does not support the trial court's finding of fact that there can be air flow between the trunk and passenger compartments of a car, such an error was harmless because the search warrant authorized a search of the entire vehicle including the trunk.

Accordingly, we affirm Fitzpatrick's conviction.

FACTS

Trooper Kyle Lindemann pulled over Fitzpatrick for speeding as he was traveling on Interstate 5 in Cowlitz County. There were two passengers in the car. Fitzpatrick admitted that he was driving without a license and Lindemann placed Fitzpatrick under arrest.

Woodland police officer Derek Kelley arrived and spoke with one of the passengers, Dustin German. Both Fitzpatrick and German had warrants based on previous convictions of possession of controlled substances. Kelley arrested German and found drug paraphernalia, including a large packet of unused syringes and a possible drug ledger.

Kelley called Deputy Ness Aguilar to bring his controlled substance detection dog, Kelo, to perform an exterior sniff check of the car. Aguilar and Kelo began at the front of the car and proceeded down the driver's side. Kelo immediately showed an extreme change of behavior and indicated the detection of controlled substance odor by sitting at the driver's side open window. Aguilar and Kelo continued around the vehicle and Kelo sniffed intently at the trunk of the car. Kelo returned to the driver's door and window and again sat to indicate the detection of controlled substance odors. Aguilar and Kelo did a third loop around the car and Kelo again sat at the driver's side open window.

Law enforcement impounded the car Fitzpatrick was driving and Kelley applied for a search warrant to search the car, including any compartments or containers inside the vehicle. Kelley included in his affidavit Aguilar's statement of his investigation of the exterior of the car as well as Aguilar and Kelo's credentials as a canine team.

In his statement, Aguilar said that he and Kelo had been certified as a canine team in Washington. Aguilar had completed over 200 hours of classroom and practical training. Aguilar and Kelo trained about four hours every week. Kelo was trained to detect cocaine, crack cocaine, heroin, and methamphetamine. When Kelo detected the odor of one of those substances, his body posture and respirations changed and he stared intently at the source of the odor. Kelo was trained to sit as close to the source of the odor as possible, and Aguilar was trained to watch for the changes in Kelo's behavior.

A judge approved the search warrant, and Kelley and another officer searched the car. Kelley found a substantial amount of methamphetamine, a digital scale, and two used glass pipes in a black box in the trunk of the car.

The State charged Fitzpatrick with possession of a controlled substance with intent to deliver – methamphetamine. Before trial, Fitzpatrick filed a motion to suppress the evidence recovered pursuant to the search.

Fitzpatrick argued that Kelley did not have probable cause to search the trunk and that the search of the trunk exceeded the proper scope of the search warrant. The trial court denied the suppression motion and entered written findings of fact and conclusions of law. The court made a finding that "[t]here can be air transfer between the trunk of a car and the passenger

3

compartment; something that is odiferous in the trunk could cause the passenger compartment to smell badly as well." Clerk's Papers at 80.

A jury acquitted Fitzpatrick of possession with intent to distribute but convicted him of the lesser included charge of possession of a controlled substance – methamphetamine. Fitzpatrick appeals the trial court's order denying his motion to suppress the evidence seized pursuant to the search warrant.

## ANALYSIS

### A. CONTROLLED SUBSTANCE DETECTION DOG SNIFF AS A SEARCH

Fitzpatrick argues that the use of a controlled substance detection dog to sniff around his car without a search warrant constituted an unlawful warrantless search. And he claims that without the dog's alert to the presence of controlled substance odors, the State did not have probable cause to obtain a search warrant for the car. We disagree.

#### 1. Legal Principles

Article I, section 7 of the Washington Constitution states that "[n]o person shall be disturbed in his private affairs, or his home invaded, without authority of law." The protected privacy interest extends to vehicles and their contents. *State v. Patton*, 167 Wn.2d 379, 385, 219 P.3d 651 (2009). Article I, section 7 prohibits warrantless searches of vehicles unless an exception to the warrant requirement applies. *State v. Froehlich*, 197 Wn. App. 831, 837, 391 P.3d 559 (2017). However, conduct that does not rise to the level of a "search" does not implicate article I, section 7. *See State v. Jones*, 163 Wn. App. 354, 361, 266 P.3d 886 (2011) (addressing open view doctrine).

In general, "a search does not occur if a law enforcement officer is able to detect something using one or more of his senses from a nonintrusive vantage point." *State v. Hartzell*, 156 Wn. App. 918, 929, 237 P.3d 928 (2010). This type of observation does not violate article I, section 7 because "something voluntarily exposed to the general public and observable without an enhancement device from a lawful vantage point is not considered part of a person's private affairs." *Id.*

A dog sniff technically is a type of investigative device. *See State v. Mecham*, 186 Wn.2d 128, 147, 380 P.3d 414 (2016). Therefore, whether using a controlled substance detection dog sniff to detect the odor of controlled substances constitutes a search depends on the specific circumstances of the case. *Hartzell*, 156 Wn. App. at 929.[1] The court in *Hartzell* stated the general rule: "[A]s long as the canine 'sniffs the object from an area where the defendant does not have a reasonable expectation of privacy, and the canine sniff itself is minimally intrusive, then no search has occurred.' " *Id.* (quoting *State v. Boyce,* 44 Wn. App. 724, 730, 723 P.2d 28 (1986)).

2. Analysis

Here, Fitzpatrick's car was parked on the side of a public road when Kelo conducted a sniff around the car. Fitzpatrick was no longer in the car. Both Aguilar and Kelo stayed outside the vehicle throughout the entire sniff procedure.

---

[1] The United States Supreme Court has held that a dog sniff is not a search under the Fourth Amendment to the United States Constitution. *E.g.*, *Illinois v. Caballes*, 543 U.S. 405, 409, 125 S. Ct. 834, 160 L. Ed. 2d 842 (2005). However, article I, section 7 provides broader protection in this context. *State v. Boyce,* 44 Wn. App. 724, 728-30, 723 P.2d 28 (1986).

In *Hartzell*, the court addressed whether a dog sniff of the air by an open car window was a search. 156 Wn. App. at 928-30. In that case, a dog sniffed a bullet hole in a car parked in a driveway and then located the gun that caused the hole nearby. *Id.* at 927-28. The court held that the dog sniff was not a search because the defendant "did not have a reasonable expectation of privacy in the air coming from the open window of the vehicle." *Id.* at 929-30. In addition, the defendant no longer was in the car, the dog was sniffing from a lawful vantage point outside the car, and "[t]he sniff was only minimally intrusive." *Id.* at 930.

The Supreme Court in *Mecham* cited *Hartzell* with approval, in a parenthetical characterizing *Hartzell*'s holding as "canine sniff outside of car window is not a search because suspects have no reasonable expectation of privacy in air outside a car window." *Mecham*, 186 Wn.2d at 147.

The analysis in *Hartzell*, confirmed in *Mecham*, compels the conclusion here that the dog sniff of the air around Fitzpatrick's car was not a search. If anything, the dog sniff in this case was less intrusive than the dog sniff in *Hartzell*. There, the dog sniffed the exterior of a car that was parked in a private driveway. *Hartzell*, 156 Wn. App. at 927. Here, Kelo sniffed Fitzpatrick's vehicle when it was parked on the side of a public road.

Fitzpatrick argues that we should follow *State v. Dearman*, 92 Wn. App. 630, 633-37, 962 P.2d 850 (1998). In *Dearman*, the court considered whether a dog sniff of the seams along a garage door to detect the odor of marijuana was a warrantless search under article I, section 7. *Id.* at 632-34. The court stated that the use of a trained controlled substance detection dog is an intrusive means of observation because it exposes private information that the police could not have obtained using only one or more of their senses from a lawful vantage point. *Id.* at 635.

The court also stated that using a significantly enhanced sensory instrument, such as a dog sniff, constituted a search because the defendant had a heightened expectation of privacy inside his private dwelling. *Id.* at 636-37.

However, *Dearman* involved a dog sniff of a garage and implicated the privacy interests associated with private dwellings. *Id.* at 632, 636. Dwellings receive more protection under article I, section 7 than vehicles. *See State v. Vrieling*, 144 Wn.2d 489, 494-95, 28 P.3d 762 (2001) (noting that motor vehicles do not receive the same heightened privacy protection as private homes). This case, like *Hartzell*, involves a dog sniff around a vehicle and the privacy interests are distinguishable. In fact, the court in *Hartzell* did not even mention *Dearman* in its analysis.

Fitzpatrick also claims that *Hartzell* is inapplicable because the court "engaged in a Fourth Amendment analysis that was inapplicable to the article I, section 7 issue before it." He claims that *Hartzell* and other cases upholding dog sniffs were wrongly decided because the privacy protections under article I, section 7 do not depend on a person's subjective expectation of privacy. However, the court in *Hartzell* grounded its decision on the general rule that something observable by the general public "is not considered part of a person's private affairs." 156 Wn. App. at 929. That general rule tracks the language of article I, section 7.

We hold that the dog sniff of the air around Fitzpatrick's vehicle was not a search and therefore was not unlawful under article I, section 7.

B.    SEARCH WARRANT VALIDITY

Fitzpatrick argues that there was insufficient probable cause to support the search warrant because the search warrant affidavit did not include information demonstrating that Aguilar and Kelo could reliably detect controlled substance odors.  We disagree.

1.    Probable Cause

Both the Fourth Amendment to the United States Constitution and article I, section 7 require probable cause to support the issuance of a search warrant. *See State v. Figeroa Martines*, 184 Wn.2d 83, 90, 355 P.3d 1111 (2015) (Fourth Amendment); *State v. Ollivier*, 178 Wn.2d 813, 846, 312 P.3d 1 (2013) (article I, section 7).  "Probable cause exists when the affidavit in support of the search warrant 'sets forth facts and circumstances sufficient to establish a reasonable inference that the defendant is probably involved in criminal activity and that evidence of the crime may be found at a certain location.' "  *Ollivier*, 178 Wn.2d at 846-47 (quoting *State v. Jackson*, 150 Wn.2d 251, 264, 76 P.3d 217 (2003)).

There must be "a nexus between criminal activity and the item to be seized and between that item and the place to be searched."  *State v. Neth*, 165 Wn.2d 177, 183, 196 P.3d 658 (2008). A search warrant affidavit must identify specific facts and circumstances from which the magistrate can infer that evidence of the crime will be found at the place to be searched.  *State v. Thein,* 138 Wn.2d 133, 147, 977 P.2d 582 (1999).

We review de novo a trial court's assessment of probable cause at a suppression hearing, giving deference to the magistrate's determination.  *Neth*, 165 Wn.2d at 182; *see also State v. Dunn*, 186 Wn. App. 889, 896, 348 P.3d 791 (2015).  We consider only the information contained in the affidavit supporting probable cause.  *Neth*, 165 Wn.2d at 182.

"Generally, an 'alert' by a trained drug dog is sufficient to establish probable cause for the presence of a controlled substance." *State v. Jackson*, 82 Wn. App. 594, 606, 918 P.2d 945 (1996). However, for an alert by a controlled substance detection dog to contribute to probable cause, the State must establish the dog's reliability. *State v. Flores-Moreno*, 72 Wn. App. 733, 741, 866 P.2d 648 (1994). The dog's training and past experience may establish its reliability. *Id.*

2.    Analysis

Fitzpatrick argues that the State did not establish Kelo's reliability because the search warrant affidavit contains no information about the dog's track record. He cites two cases in which the court mentioned the detection dog's track record in determining that the dog was reliable: *Flores-Moreno*, 72 Wn. App. at 741; *Jackson*, 82 Wn. App. at 606.

However, no court has held that the State must demonstrate a controlled substance detection dog's successful track record to show that the dog is reliable for purposes of supporting probable cause. The only court to expressly address this issue held that the State could establish a controlled substance detection dog's reliability based on "a statement that the dog is trained or certified, without a showing of the dog's track record." *State v. Gross*, 57 Wn. App. 549, 551, 789 P.2d 317 (1990), *overruled on other grounds by Thein*, 138 Wn.2d 133. The court also cited federal cases stating that a dog's reliability could be established based on training alone. *Gross*, 57 Wn. App. at 551. The court held that the dog was reliable for purposes of supporting probable cause because the search warrant affidavit had stated that the dog was trained to detect drugs. *Id.* at 551-52.

Here, the search warrant affidavit included a statement by Aguilar establishing that he had completed over 200 hours of training as a canine handler for the detection of controlled substances and he and Kelo were certified as a canine team. Aguilar stated that one of the specific areas of training was vehicle searching. This information was sufficient to show that Kelo could reliably detect controlled substance odors.

Fitzpatrick argues that we must determine whether Kelo was reliable under the *Aguilar-Spinelli*[2] test, which is used in the context of probable cause based on an informant's tip. He cites *Florida v. Harris*, 568 U.S. 237, 244-46, 133 S. Ct. 1050, 185 L. Ed. 2d 61 (2013), for the proposition that we treat a detection dog alert like an informant's tip in determining if the information is reliable enough to support probable cause.

However, nothing in the Court's holding in *Harris* suggests that courts must apply the *Aguilar-Spinelli* test to a controlled substance detection dog alert. In fact, the Court stated that evidence of a dog's satisfactory completion of a certification or training program can presumptively establish the dog's reliability. *Id.* at 246-47.

We conclude that the State adequately demonstrated Kelo's reliability in the search warrant affidavit by stating that he had completed an extensive training program and was up-to-date on his certification as a controlled substance detection dog. Therefore, we hold that the trial court did not err in ruling that there was probable cause to obtain a search warrant of the car based on Kelo's alert to the presence of controlled substance odors.

---

[2] *Aguilar v. Texas*, 378 U.S. 108, 84 S. Ct. 1509, 12 L. Ed 2d 723 (1964); *Spinelli v. U.S.*, 393 U.S. 410, 89 S. Ct. 584, 21 L. Ed 2d 637 (1969).

C.      CHALLENGED FINDING OF FACT

Fitzpatrick argues that the trial court erred in making a finding of fact that there could be air flow between the trunk and passenger compartments of a car.[3]  He claims that this finding is not supported by the evidence and therefore that the search warrant should have been limited to the passenger compartment of the car.  We hold that any such error was harmless.

We review a trial court's written findings in a ruling on a motion to suppress to determine whether they are supported by substantial evidence.  *Froehlich*, 197 Wn. App. at 837.  Evidence is substantial if it is enough to persuade a fair-minded person of the truth of the stated premise.  *Id.* Unchallenged findings are treated as verities on appeal.  *State v. Betancourth*, 190 Wn.2d 357, 363, 413 P.3d 566 (2018).  An error regarding a finding of fact is harmless if it appears beyond a reasonable doubt that the finding does not materially affect the trial court's conclusions of law. *State v. Coleman*, 6 Wn. App. 2d 507, 516, 431 P.3d 514 (2018).

Here, any error in the challenged finding of fact was harmless because this finding was immaterial to the suppression motion.  The search warrant affidavit requested permission to search the entire vehicle, including any locked or unlocked compartments or containers.  "A warrant to search a vehicle would support a search of every part of the vehicle that might contain the object of the search . . . [and] applies equally to all containers."  *U.S. v. Ross*, 456 U.S. 798, 821-22, 102 S. Ct. 2157, 72 L. Ed. 2d 572 (1982); *see also State v. Witkowski*, 3 Wn. App. 2d 318, 325-26, 415 P.3d 639, *rev. denied* 191 Wn.2d 1016 (2018).  Further, the affidavit stated,

---

[3] Fitzpatrick also assigns error to two other findings of fact.  However, he provides no argument stating how the trial court erred in making those findings.  This court may decline to address assignments of error that are not supported by argument or authority.  RAP 10.3(a)(6); *State v. Cherry*, 191 Wn. App. 456, 464 n.3, 362 P.3d 313 (2015).  Accordingly, we decline to address these assigned errors.

and the trial court made an unchallenged finding of fact, that Kelo had sniffed intently at the trunk area of the car during the free air sniff.

The trial court's unchallenged findings and the affidavit's specific description of the areas to be searched support the trial court's conclusion that the search warrant authorized a search of the entire vehicle, including the trunk.

Accordingly, we hold that even if the trial court erred in finding that there could be air flow between the trunk and passenger compartment of a car, the error was harmless because the finding does not affect the validity of the trial court's suppression ruling.

## CONCLUSION

We affirm Fitzpatrick's conviction.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
MAXA, C.J.


We concur:

_____
WORSWICK, J.

_____
GLASGOW, J.