**IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON**

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>                Respondent,<br><br>    v.<br><br>STEVEN PAUL THORNTON,<br><br>                Appellant. | No. 81036-7-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

LEACH, J. — Steven Thornton appeals his convictions for possession of stolen firearms, unlawful possession of firearms, and unlawful possession of a stolen motor vehicle. We affirm his convictions but remand to strike the filing fee and DNA collection fee.

BACKGROUND

Steven Thornton asked a friend, Steven Sands, to rent a storage unit for Thornton's use. Thornton accessed the unit 40 or 50 times between May 14, 2016, and July 7, 2016. Thornton was the only person to store belongings in the unit.

Detective Eric Barry of the Puyallup Police Department received information from a confidential informant that Thornton had bragged about storing stolen dirt bikes and guns in a particular storage unit. Thornton's criminal history made it illegal for him to possess guns.

On July 7, 2016, Stor-Eze storage facility's manager informed Barry that Thornton was there. Barry and his partner, Detective Greg Massey, arrived and

Citations and pincites are based on the Westlaw online version of the cited material.

conducted surveillance on Thornton's unit for half an hour to 45 minutes. Barry noticed Thornton working on motorcycles and going in and out of the storage unit.

Officers then arrested Thornton based on an outstanding warrant. Shortly after Massey advised Thornton of his constitutional rights, Barry questioned him. Thornton stated the blue dirt bike belonged to him and that he was towing a second dirt bike, which the officers later learned was stolen, on the trailer attached to his pick-up truck for a friend. He denied knowing the dirt bike was stolen. He also stated all of the items in the storage unit belonged to his cousin Calvin Larson. He stated there were no firearms in the pick-up truck or the storage unit, but that firearms had been in the storage unit in the past. He said he had been in the unit numerous times and had stored his own items in the unit. Officers then took Thornton to the Puyallup jail.

Based on the information from the informant and Barry's own observations, Barry obtained a search warrant for the pick-up truck, trailer, and storage unit. While Barry left the scene to obtain the search warrant, other officers remained on-scene to keep the premises secure. During Barry's return to the scene, the other officers noticed two gun safes in the storage unit and reported this to Barry. He then went to the Puyallup jail to obtain the gun safe combinations from Thornton. Thornton first denied knowing the combinations but then called someone to get them. During the "call," Barry did not hear a voice on the other end of the line like he is usually able to hear when he has allowed suspects to use his phone in the past. After Thornton said, "What's the combo to the safe," he handed the phone right back to Barry and told him the combination. The safes did not open with the

2

combination that Thornton provided.  Thornton then told Barry to "type it in and it should beep twice, and then you can open it."  Officers eventually opened one safe with a key found on a key ring in the ignition of the pick-up truck.  They forced the other safe open with a pry bar.

Officers found a holstered .40 caliber pistol, with the grip protruding, and ammunition in the pick-up truck underneath the seat. They also found 26 other firearms inside the storage unit some of which were locked inside the two gun safes.  Seven of the firearms were stolen.

The State charged Thornton with nine counts possession of a stolen firearm, twenty-four counts of unlawful possession of a firearm, and one count of unlawful possession of a stolen vehicle.

Before trial, Thornton asked the court to suppress evidence seized claiming insufficient probable cause supported the search warrant.  The trial court denied the request finding that any Aguilar-Spinelli defects in the affidavit were cured by the officers' own observations therefore the warrant was supported by probable cause.

The jury found Thornton guilty as charged.  The trial court sentenced Thornton to 212 months in custody, and imposed a $100 DNA collection fee and a $200 criminal filing fee.  Thornton appeals.

ANALYSIS

Thornton first claims the trial court should have suppressed all evidence seized pursuant to a search warrant because no probable cause supported the warrant's authorization to search the storage unit.

We review a trial court's probable cause decision as a mixed question of law and fact.[1] We first review the findings of fact related to a suppression request under the substantial evidence standard.[2] Because Thornton challenges none of the trial court's findings of fact, we accept them as true on appeal.[3] We then decide if the facts support the legal conclusion - the existence of probable cause.[4] "We review conclusions of law pertaining to suppression of evidence de novo."[5]

Probable cause exists if the evidence in support of the warrant sets forth facts and circumstances sufficient to establish a reasonable inference that the defendant is probably involved in criminal activity and that evidence of the crime can be found at the place to be searched.[6] Accordingly, "probable cause requires a nexus between criminal activity and the item to be seized, and also a nexus between the item to be seized and the place to be searched."[7]

---

[1] City of College Place v. Staudenmaier, 110 Wn. App. 841, 846, 43 P.3d 43 (2002) (citing State v. Vasquez, 109 Wn. App. 310, 34 P.3d 1255 (2001).
[2] State v. Levy, 156 Wn.2d 709, 733, 132 P.3d 1076 (2006) (citing State v. Mendez, 137 Wn.2d 208, 214, 970 P.2d 722 (1999).
[3] State v. Benitez, 175 Wn. App. 116, 121-22, 302 P.3d 877 (2013) (citing State v. Lorenz, 152 Wn.2d 22, 30, 93 P.3d 133 (2004).
[4] Staudenmaier, 110 Wn. App. at 846.
[5] Levy, 156 Wn.2d at 733 (citing Mendez, 137 Wn.2d at 214).
[6] State v. Cole, 128 Wn.2d 262, 286, 906 P.2d 925 (1995); State v. Dalton, 73 Wn. App. 132, 136, 868 P.2d 873 (1994).
[7] State v. Goble, 88 Wn. App. 503, 509, 945 P.2d 263 (1997) (citing Wayne R. LaFave, Search and Seizure § 3.7(d), at 372 (3d ed.1996).

Aguilar-Spinelli Requirements

Thornton claims that the State did not prove the necessary Aguilar-Spinelli requirements because the informant's information was not established as reliable, and without the informant's information, the State failed to establish a nexus between the items to be seized (firearms and stolen property) and the storage unit.

We apply the test announced in Aguilar v. Texas[8] and Spinelli v. United States[9] to determine if an informant's tip can establish probable cause to arrest.[10] This test requires the State must establish (1) the basis of the informant's information and (2) the informant's credibility or the reliability of the informant's information.[11] Courts label these two prongs the knowledge prong and the veracity prong.[12] Courts use the "veracity" prong to evaluate the informant's "track record" (i.e., has he provided accurate information to the police a number of times in the past?).[13] Courts use the "basis of knowledge" prong to evaluate the reliability of the informant's asserted knowledge.[14]

Even if the informant's information fails both prongs, an independent police investigation corroborating the informant's tip can sufficiently cure a deficiency.

---

[8] 378 U.S. 108, 84 S. Ct. 1509, 12 L. Ed. 2d 723 (1964).

[9] 393 U.S. 410, 89 S. Ct. 584, 21 L. Ed. 2d 637 (1969).

[10] State v. Gaddy, 152 Wn.2d 64, 71, 93 P.3d 872 (2004). Although the United States Supreme Court rejected the Aguilar-Spinelli test for the "totality-of-the-circumstances" test in Illinois v. Gates, 462 U.S. 213, 230, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983), we still adhere to the Aguilar-Spinelli informant test. State v. Jackson, 102 Wn.2d 432, 443, 688 P.2d 136 (1984).

[11] Gaddy, 152 Wn.2d at 71-72 (citing State v. Cole, 128 Wn.2d 262, 287, 906 P.2d 925 (1995)).

[12] State v. Jackson, 102 Wn.2d 432, 437, 688 P.2d 136 (1984).

[13] Jackson, 102 Wn.2d at 437.

[14] Jackson, 102 Wn.2d at 437.

The independent police investigations should point to suspicious activity, "'probative indications of criminal activity along the lines suggested by the informant.' "[15]

Thornton claims the State failed to satisfy the Aguilar-Spinelli test because the officer's affidavit "did not contain sufficient information about the informant to satisfy either the knowledge or reliability prong."

An informant told officers that Thornton rented a storage unit in another person's name. The informant directly observed numerous bikes, motorcycles, and tools that Thornton told the informant were stolen, and observed firearms that Thornton told the informant were stolen during burglaries.

After the storage facility manager told Barry that Thornton arrived at the storage facility on a motorcycle, accompanied by a pick-up truck towing a trailer containing several dirt bikes, motorcycles, and a go-cart, Barry and Massey went to the storage facility. They saw Thornton going in and out of the storage unit and working on the dirt bikes and motorcycles. Because Thornton had an outstanding warrant for his arrest, officers arrested him. Before Barry spoke with Thornton after his arrest, Barry noticed a pistol in the pick-up visible from the outside. He also saw dirt bikes parked inside the storage unit.

After Barry read Thornton his Miranda rights, Thornton told him that he had "seen" guns in the storage unit before. He also admitted that he had stored things in the unit.

---

[15] United States v. Canieso, 470 F.2d 1224, 1231 (2d Cir.1972).

Based on the fact that Thornton is a convicted felon, admitted there was at least one more gun inside the storage unit, in addition to the gun Barry saw in the truck, and because he was "on top of a stolen motorcycle," officers requested the search warrant. The officers here made an independent investigation that corroborated the information Barry received from the informant. This investigation cured any deficiency in either prong of the Aguilar-Spinelli test.

Nexus

Thornton next claims that without the informant's statements, the search warrant did not establish the necessary nexus between the items seized and the storage unit. Because the officer's independent investigation corroborated the informant's information, which created the basis for the search warrant, Thornton's nexus claim fails.

Scope of Warrant

For the first time on appeal, Thornton claims the officers were not authorized to search the gun safes because the search warrant was silent as to the safes.

Generally, an appellate court will not review issues raised for the first time on appeal. A recognized exception to this rule allows review if a party shows a "manifest error affecting a constitutional right."[16] This exception to the general rule exists because constitutional errors "often result in injustice to the accused and

---

[16] RAP 2.5(a)(3).

may adversely affect public perceptions of the fairness and integrity of judicial proceedings."[17]

To establish manifest constitutional error, a criminal defendant must identify a constitutional error and make a showing that the error likely prejudiced his rights at trial.[18] "It is this showing of actual prejudice that makes the error 'manifest,' allowing appellate review."[19] "If the facts necessary to adjudicate the claimed error are not in the record on appeal, no actual prejudice is shown and the error is not manifest."[20]

Because this court has already held that a premises search warrant to search for firearms authorizes entry into a locked safe,[21] Thornton fails to establish that his claimed error is a manifest error.

Sufficiency of the Evidence

Thornton next claims the State failed to present sufficient evidence to allow a jury to find that he knew he possessed stolen firearms and a stolen motor vehicle.

When a defendant in a criminal case challenges the sufficiency of the evidence, an appellate court reviews the record for evidence in the light most

---

[17] State v. McFarland, 127 Wn.2d 322, 333, 899 P.2d 1251 (1995).
[18] State v. Kirkman, 159 Wn.2d 918, 926-27, 155 P.3d 125 (2007).
[19] Kirkman, 159 Wn.2d at 927 (citing McFarland, 127 Wn.2d at 333).
[20] McFarland, 127 Wn.2d at 333.
[21] State v. Witkowski, 3 Wn. App. 2d 318, 326-28, 415 P.3d 639 (2018).

favorable to the State to determine whether any rational juror could find the essential elements of the crime beyond a reasonable doubt.[22]

The trial court instructed the jury that to convict Thornton of possessing a stolen firearm, it had to find, beyond a reasonable doubt:

> (1) That on or about the 7th day of July, 2016 the defendant possessed or was in control of a stolen firearm;
> (2) That the defendant acted with knowledge that the firearm had been stolen;
> (3) That the defendant withheld or appropriated the firearm to the use of someone other than the true owner or person entitled thereto; and
> (4) That any of these acts occurred in the State of Washington.

The trial court also instructed the jury that to convict Thornton of possessing a stolen motor vehicle, it had to find, beyond a reasonable doubt:

> Possessing a stolen motor vehicle means knowingly to receive, retain, possess, conceal, or dispose of a stolen motor vehicle knowing that it has been stolen and to withhold or appropriate the same to the use of any person other than the true owner or person entitled thereto.

The trial court instructed the jury that:

> A person knows or acts knowingly or with knowledge with respect to a fact, circumstance, or result when he or she is aware of that fact, circumstance, or result. It is not necessary that the person know that the fact, circumstance, or result is defined by law as being unlawful or an element of a crime.
> If a person has information that would lead a reasonable person in the same situation to believe that a fact exists, the jury is permitted but not required to find that he or she acted with knowledge of that fact.
> When acting knowingly as to a particular fact is required to establish an element o f a crime, the element is also established if a person acts intentionally as to that fact.

---

[22] State v. Salinas, 119 Wn.2d. 192, 201, 829 P.2d 1068 (1992).

Thornton asserts the State did not present sufficient evidence to show he knew certain firearms and the motorcycle were stolen. Instead, "the State proved nothing more than Thornton's bare possession of the stolen guns" and a stolen motor vehicle.

The State responds that Thornton's rental of the storage unit in someone else's name, and the denial of having guns in the unit, provides sufficient evidence to support the convictions of possession of a stolen firearm and a stolen motor vehicle.

Thornton notes that these actions are just as consistent with the fact that, as a convicted felon, it was illegal for Thornton to possess any guns at all as they are with him knowing the guns were stolen. He further notes that except for Thornton's exculpatory testimony about the motorcycle, the record contains no evidence for the manner in which Thornton gained possession of the stolen guns, or stolen vehicle, or any characteristics about the guns. But, Thornton's argument only shows that the evidence presented by the State permits two competing inferences. The jury could reasonably draw either one.

So, viewing the evidence in the light most favorable to the State, a rational trier of fact could find beyond a reasonable doubt that Thornton knew the firearms and the motor vehicle were stolen.

Filing and DNA Fees

Thornton asks this court to strike the DNA collection fee and the filing fee from his judgment and sentence. He contends, and the State concedes, that State

10

v. Ramirez[23] requires this relief because the State previously collected his DNA and because he is indigent. We accept the concession of error and remand to the trial court for a ministerial order striking the DNA fee and the filling fee from the judgment and sentence.[24]

Statement of Additional Grounds

Thornton raises several issues in his pro se statement of additional grounds under RAP 10.10. Thornton's counsel addressed some of his assertions in his opening brief,[25] so we rely on the above analysis to resolve these claims.

Thornton claims "running the motorcycle's [v]in [n]umbers, exceeded the scope of any protective sweep." We are not aware of any authority prohibiting this action.

He also claims the officers used the outstanding warrant as a pretext to establish probable cause to secure a warrant, and that "there has never been any mention of the officer's witnessing any criminal activity at the storage locker." But, Barry stated, based on a tip received from an informant, and the knowledge that Thornton was a felon, the officers did not need to "witness" criminal activity per say, they just needed to establish probable cause in order to establish Thornton

---

[23] 191 Wn.2d 732, 746-50, 426 P.3d 714 (2018).
[24] State v. Ramos, 171 Wn.2d 46, 48, 246 P.3d 811 (2011) (noting "when a hearing on remand involves only a ministerial correction and no exercise of discretion, the defendant has no constitutional right to be present").
[25] He first claims Barry "relied on his source to establish that the locker may contain stolen property," but "an anonymous tip standing alone cannot give rise to probable cause." We addressed this claim above. He also claims there was insufficient evidence proving his conviction to the possession of stolen firearms. Because we reverse and remand on this issue, we need not again address it here.

was committing a crime.[26] He claims that "[h]ad the detective witness[ed] any criminal activity during his surveillance, he had ample opportunity to bring this evidence to a [j]udge to ensure probable cause existed."

But, officers do not need to witness criminal activity in order to establish probable cause as Thornton suggests. Officers merely need an affidavit in support of the warrant that sets forth facts and circumstances sufficient to establish a reasonable inference that the defendant is probably involved in criminal activity and that evidence of the crime can be found at the place to be searched.[27] And here, the officers did with the informant's information confirmed by their own observations.[28]

Thornton also repeatedly assigns error to the officers' "protective sweep" with accompanying issues that stem from the sweep. But, the officers obtained a warrant legally, so no "sweep" occurred.

Finally, Thornton claims that he received ineffective assistance of counsel, because at trial his attorney did not challenge a search warrant based upon "the timeline of events with the CAD log, revealed that the detective had entered the locker before the search warrant had been issued."

We review ineffective assistance of counsel claims de novo.[29] To establish this claim, Thornton must show (1) defense counsel's conduct was deficient, i.e., that it fell below an objective standard of reasonableness and (2) that the deficient

---

[26] Refer to probable cause discussion above.
[27] Cole, 128 Wn.2d at 286; State v. Dalton, 73 Wn. App. 132, 136, 868 P.2d 873 (1994).
[28] Refer to probable cause discussion above.
[29] In re Brett, 142 Wn.2d 868, 873, 16 P.3d 601 (2001).

performance prejudiced him or that there is a reasonable possibility that but for counsel's deficient performance, the outcome of his trial would have been different.[30]  Our scrutiny of defense counsel's performance is highly deferential, and we employ a strong presumption of reasonableness.[31]  "To rebut this presumption, the defendant bears the burden of establishing the absence of any 'conceivable legitimate tactic explaining counsel's performance.'"[32]  Failure to satisfy either prong of the test defeats an ineffective assistance of counsel claim.[33]

Here, the record contains no evidence showing the officers searched any areas listed in the search warrant before the judge signed it at 9:17.  During trial, Thornton's attorney cross-examined Barry and obtained information that it took Barry about one hour after the judge signed the warrant to return to the storage unit facility where officers then began the search.  The officers logged the first gun which was found outside of the safe at 10:14 pm.  Thornton fails to show that a motion to suppress based on this information would likely have succeeded.  This argument fails.

CONCLUSION

We affirm in part and reverse and remand in part.  First, because Barry's independent investigation corroborated the informant's information, sufficient information for probable cause supported the search warrant.  Because the search

---

[30] State v. Reichenbach, 153 Wn.2d 126, 130, 101 P.3d 80 (2004) (citing State v. Thomas, 109 Wn.2d 222, 225-26, 743 P.2d 816 (1987).
[31] Strickland v. Washington, 466 U.S. 668, 689, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); McFarland, 127 Wn.2d at 335-36.
[32] State v. Grier, 171 Wn.2d 17, 42, 246 P.3d 1260 (2011) (quoting Reichenbach, 153 Wn.2d at 130).
[33] Strickland, 466 U.S. at 697.

warrant specified a search for firearms, searching locked gun safes was within the scope of the search warrant. So, we affirm his unlawful possession of firearm convictions. Next, sufficient evidence supported his possession of stolen firearms, and stolen motor vehicle convictions, because the State presented evidence supporting the reasonable inference that Thornton had knowledge the firearms and motor vehicle were stolen property. Finally, because the State concedes and law requires it, we remand and instruct the court to strike the DNA collection fee and filing fee.

_____Leach, J._____

WE CONCUR:

_____          _____Dwyer, J._____